## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| William Grecia, | Case No. |
| Plaintiff, | |
| v. | Judge: |
| | Magistrate Judge: |
| Apple Inc., | |
| | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

William Grecia brings this patent-infringement action against Apple Inc.

### Parties

1. William Grecia lives in Brooklyn, New York.

2. Apple is a corporation organized under the laws of California, with its principal place of business located at 1 Infinite Loop, Cupertino, California 95014.

### Jurisdiction and Venue

3. This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court may exercise personal jurisdiction over Apple. Apple conducts continuous and systematic business in Illinois and this District. For example, Apple designs and manufactures computer software, consumer electronic products, and computers that Apple licenses and sells in this District. Apple maintains corporate

offices and retail locations in this District. Apple uses a cloud-computing system that authorizes Apple users in this District access to digital content such as movies, music, television shows, photos, documents, and other electronic files. This patent-infringement claim arises directly from Apple's continuous and systematic activity in this District. In short, this Court's exercise of jurisdiction over Apple would be consistent with the Illinois long-arm statute, 735 ILCS 5/2-209, and traditional notions of fair play and substantial justice.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(b).

**Background**

7. William Grecia owns United States Patent 8,533,860 (the "'860 patent") and at least one continuing application claiming back to the original priority date of March 21, 2010. William Grecia invented the methods and products claimed in the '860 patent.

8. The field of the invention of the '860 patent is digital rights management, commonly referred to as "DRM." The movement of books, movies, and music to digital form has presented a challenge to the copyright owners of the content. The owners wish to sell the content in a digital form and transfer all attributes of ownership to the buyer, and yet the owners of the content must protect value by preventing "pirating" of the content through illicit copying.

9. DRM schemes to date had locked the purchased content, a movie for example, to specific devices and in some cases limited playback rights to a single device. These prior art DRM methods required the content providers (a movie studio in the

example) to maintain computer servers to receive and send session authorization keys to clients, and the prior DRM methods required that the client reconnect with the servers to obtain reauthorization. These DRM schemes may be characterized by limiting acquired content to a specific device that the client continually had to reauthorize to enjoy the acquired content.

10. The '860 invention provides a solution. With this invention, a consumer of digital content may enjoy the content on a multiple number of the consumer's devices and share the content with the consumer's friends and family, all while protecting against unlicensed use of the digital content.

## Claim of Patent Infringement

11. William Grecia is the exclusive owner of the '860 patent, which is attached as Exhibit 1.

12. The '860 patent is valid and enforceable.

13. Apple has and is directly infringing claims of the '860 patent. Apple makes, uses, sells, and offers for sale products, methods, equipment, and services that practice claims 1, 2, 3, 4, 5, 9, 10, 21, 25, 28, and 29 of the '860 patent.

14. For example, and without limiting the claims of the '860 patent asserted or the Apple devices and services accused of infringing the '860 patent claims, Apple's cloud computing service iCloud directly infringes claim 1 of the '860 patent.

15. Claim 1 is "[a] method for authorizing access to digital content using a cloud system . . . ." iCloud practices a method of authorizing access to digital content—such as music, movies, photos, and calendars—using a cloud computing system.

16. The method of claim 1 is one "facilitating access rights between a plurality of devices . . . ." "Set up iCloud on all your devices. The rest is automatic." http://www.apple.com/icloud/setup/.

17. According to the method of claim 1, a read or write request of metadata of the digital content is received. This request comprises a verification token of a user, such as, for example, the user's email address and password. An iCloud user requests access to her digital content by requesting that iCloud write her "Apple ID"—email address and password—to metadata of the digital content: "An Apple ID is the email address you use as a login for just about everything you do with Apple, including using iCloud to store your content, buying songs from the iTunes Store, and downloading apps from the App Store." http://support.apple.com/kb/HT4895.

18. In claim 1, after the verification token has been authenticated, a connection is established between a communications console and a server. The connection is established through a web service capable of facilitating a two-way exchange between the console and the server relaying the unique identity of the devices for which access to the digital content is sought. Apple establishes a connection between the communications console (e.g., the iCloud settings app) and the iCloud servers. The iCloud web service is capable of facilitating a two-way exchange to complete the verification process: "iCloud Storage APIs enable your apps to store content in iCloud, keeping your apps up to date automatically. Use iCloud to give your users a consistent and seamless experience across iCloud-enabled devices." https://developer.apple.com/icloud/index.php.

19. Next, claim 1 involves the step of requesting an identification reference, such as a unique identifier associated with a device for which the user wishes access to digital content. The iCloud service requests an identification reference from the communications console (e.g., the iCloud settings app) in order to connect the user's devices to the user's iCloud content associated with the user's Apple ID: "A UUID is made unique over both space and time by combining a value unique to the computer on which it was generated and a value representing the number of 100-nanosecond intervals since October 15, 1582 at 00:00:00." http://developer/apple.com/library/ios/#documentation/Foundation/Reference/NSUUID_Class/Reference.html#//apple_ref/occ/clm/NSUUID/UUID.

20. Next, according to claim 1, the identification reference is received from the communications console. The iCloud service receives an identification reference from the iCloud app. As shown below, devices' GUID and model are communicated to the iCloud servers:



21. Finally, claim 1 involves writing either the verification token or the identification reference into the metadata. iCloud writes, among other things, the user's device information into the metadata stored on iCloud, authorizing the user access to the content stored on iCloud: "iCloud does more than store your content — it lets you access your music, photos, calendars, contacts, documents, and more, from whatever device you're on." http://www.apple.com/icloud.

22. Apple knows of the '860 patent and nonetheless willfully infringes the claims, contributes to the infringement of the claims, and induces the infringement of the claims. Apple actually knows of the '860 patent. Apple disclosed the '860 patent as prior art in the following patent applications: 12/766,337 and 12/846,363.

23. Apple sells telephones, tablet computers, laptop computers, and desktop computers that contain components for use in practicing the steps of the claims of the '860 patent. These components within these devices (e.g., iCloud settings app) perform a material part of claims of the '860 patent. Apple knows that these components on these devices are especially adapted for use in infringement of the '860 patent claims. These components on these devices are not suitable for a substantial non-infringing use.

24. Apple induces consumers of telephones, tablet computers, laptop computers, and desktop computers to infringe the '860 patent claims: "To get the most out of iCloud, make sure to set it up on your iPad, iPhone, iPod touch, Mac, and PC." http://www.apple.com/icloud/setup/.

**Prayer for Relief**

WHEREFORE, William Grecia prays for the following relief against Apple:

(a) Judgment that Apple has directly infringed claims of the '860 patent claims;

(b) Judgment that Apple has contributed to the infringement of the '860 patent claims;

(c) Judgment that Apple has induced the infringement of the '860 patent claims;

(d) For a fair and reasonable royalty;

(e) For treble damages based on a finding that the infringement of the '860 patent claims was willful;

(f) For pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

(g) For such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

William Grecia demands a trial by jury on all matters and issues triable by jury.

Date:  December 6, 2013

/s/ Matthew M. Wawrzyn
Matthew M. Wawrzyn
Stephen C. Jarvis
WAWRZYN LLC
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
(312) 283-8330
matt@wawrzynlaw.com
stephen@wawrzynlaw.com

*Counsel for William Grecia*