John Mansfield (Bar #214848)
john@mansfieldlaw.net
**MansfieldLaw**
1001 Bayhill Dr., 2nd Floor
San Bruno, CA 94066
(971) 271-8615

Matthew M. Wawrzyn (admitted *pro hace vice*)
matt@wawrzynlaw.com
Stephen C. Jarvis (admitted *pro hac vice*)
stephen@wawrzynlaw.com
**Wawrzyn LLC**
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
(312) 283-8330

*Counsel for William Grecia*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William Grecia,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Apple Inc. and ABC, Inc. d/b/a Walt Disney Studios Motion Pictures,<br><br>　　　　　Defendants. | Case No. 3:14-CV-00775 EMC<br><br>**Opposition to Apple Inc.'s and ABC, Inc.'s Motions to Dismiss**<br><br>Date: August 28, 2014<br>Time: 1:30 p.m.<br>Place: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen<br><br>*Jury Trial Demanded* |

Opposition to Motions to Dismiss
Case No. 3:14-cv-00775 EMC

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................... ii

Introduction .................................................................................................................................1

Background .................................................................................................................................2

Argument .....................................................................................................................................5

I. The Court should deny the Motion to Dismiss as to Count 2 because Disney should not escape liability by contracting out performance of an element to Apple. ..........................................................................................................5

II. The Court should deny Apple's Motion to Dismiss with respect to Count 3 because Grecia adequately alleges Apple's knowledge and the similarities between the asserted claims and Disney Movies Anywhere. ......................................9

III. The Court should deny the Motion to Dismiss because Apple's willful infringement is adequately pled. ...............................................................................11

Conclusion ................................................................................................................................12

# TABLE OF AUTHORITIES

*AntiCancer, Inc. v. Fujifilm Medical Sys. U.S.A., Inc.*,
  745 F. Supp. 2d 1165 (S.D. Cal. 2010) ............................................................................. 10 n.4

*Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*,
  No. 11-C-04049, 2012 WL 1030031 (N.D. Cal. March 22, 2012) ..................................... 5

*Ashcroft v. Iqbal*,
  556 U.S. 662, 679 (2009) ..................................................................................................... 5

*Bascom Research LLC v. Facebook, Inc.*,
  No. 12-cv-6293-SI, 2013 WL 968210 (N.D. Cal. Mar. 12, 2013) ..................................... 12

*BMC Resources, Inc. v. Paymentech, L.P.*,
  498 F.3d 1373 (Fed. Cir. 2007) ............................................................................... 5, 6, 7, 8

*Brandywine Commc'ns Tech., LLC v. Casio Computer Co. Ltd.*,
  912 F. Supp. 2d 1338 (M.D. Fla. 2012) ........................................................................ 8 n.3

*Centillion Data Sys. LLC v. Qwest Commc'ns Int'l, Inc.*,
  631 F.3d 1279 (Fed. Cir. 2011) .......................................................................................... 7

*Clear with Computers, LLC v. Hyundai Motor Am., Inc.*,
  No. 6:09 CV 479, 2011 WL 2436535 (E.D. Tex. June 14, 2011) ................................. 6 n.1

*EON Corp. IP Holdings LLC v. FLO TV Inc.*,
  802 F. Supp. 2d 527 (D. Del. 2011) ............................................................................. 7 n.2

*Federal-Mogul World Wide, Inc. v. Mahle GMBH*,
  No. 11-10675, 2011 WL 4485080 (E.D. Mich. Sept. 27, 2011) .................................. 6 n.1

*Friday Group v. Ticketmaster*,
  No. 4:8CV01203 JCH, 2008 WL 5233078 (E.D. Mo. Dec. 12, 2008) ........................ 8 n.3

*Infineon Tech. AG v. Volterra Semiconductor Corp.*,
  No. C-11-6239 MMC, 2012 WL 3939353 (N.D. Cal. Sept. 10, 2012) ............................ 10

*IpVenture, Inc. v. Cellco P'ship*,
  No. C 10-04755 JSW, 2011 WL 207978 (N.D. Cal. Jan. 21, 2011) ........................... 11, 12

*Joao Control & Monitoring Sys. of Cal. v. Sling Media, Inc.*,
  No. C 11-6277 EMC, 2012 WL 3249510 (N.D. Cal. Aug. 7, 2012) ............................. 7, 9

*K-Tec, Inc. v. Vita-Mix Corp.*,
  696 F.3d 1364 (Fed. Cir. 2012) ..................................................................................11, 12

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
  No. 12-0786, 2014 WL 2440535 (U.S. June 2, 2014) ........................................................ 10

*Muniauction, Inc. v. Thomson Corp.*,
  532 F.3d 1318 (Fed. Cir. 2008) ........................................................................................... 7

*Nu Flow Tech. (2000) Inc. v. A.O. Reed & Co.*,
  No. 13-CV-1818 BEN, 2014 WL 1400127 (S.D. Cal. April 8, 2014) ........................... 8 n.3

*R+L Carriers, Inc. v. DriverTech LLC*
*(In re Bill of Lading Transmission & Processing System Patent Litigation)*,
  681 F.3d 1323 (Fed Cir. 2012) .......................................................................................... 10

*Ronald A. Katz Tech. Licensing, Ltd. P'Ship v. Echostar Satellite, LLC*
*(In re Katz Interactive Call Processing Patent Litigation)*,
  Nos. MDL 2:07-ML-1816, 2010 WL 8759120 (C.D. Cal. Dec. 3, 2010) ..................... 6 n.1

*Rowe Int'l Corp. v. Ecast, Inc.*,
  586 F. Supp. 2d 924 (N.D. Ill. 2008) ................................................................................... 5

*TGIP, Inc. v. AT&T Corp.*,
  527 F. Supp. 2d 561 (E.D. Tex. 2007) ................................................................................. 6

*Usher v. City of Los Angeles*,
  828 F.2d 556 (9th Cir. 1987) ............................................................................................... 5

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009) .......................................................................................... 11

**Introduction**

William Grecia invented a cloud computing system that allows us to enjoy the digital content that we own on our computers, television sets, tablets, and telephones. The field of invention, digital rights management ("DRM"), has been around for decades and the prior art teaches access to digital content on numerous devices. Mr. Grecia's breakthrough with U.S. 8,533,860 (the "'860 patent"), however, was to allow users seamless authorized access to their digital content by communicating an individual's ownership rights and device information to the content over the Internet.

Simply stated, the '860 invention involves two steps to effect an individual's seamless authorized access to digital content. First, the user (Lucy) requests access to her digital content by presenting credentials that embody her ownership rights—an email address and password for example. Second, and after Lucy's ownership rights have been confirmed, a connection is established with a verified web service, the service capable of authenticating the device on which Lucy wishes to view or listen to her digital content.

In this lawsuit, Mr. Grecia accuses two Internet services of infringing the '860 patent: iCloud and Disney Movies Anywhere. The case against iCloud (Count 1) is for direct infringement. iCloud allows a user like Lucy seamless authorized access to her digital content by practicing the '860 method. First, Lucy inputs her Apple ID and establishes that she owns the digital content for which she seeks access. Second, Apple establishes a connection between its iCloud web service and Lucy's device, say her iPhone, and authorizes Lucy access on her iPhone to the movies and songs that she owns.

The claim against Disney Movies Anywhere (Count 2) is different only in that Disney contracts with Apple to perform the second step—connecting with a verified web service. Thus, under the joint-infringement theory, if Lucy wishes to watch the movie "The

Incredibles" on her iPhone, she would first present her Disney ID to Disney to prove that she owns the movie. Second, Lucy would be asked to enter her Apple ID as proof that her iPhone also had authorized access to "The Incredibles."

The Court should deny Disney's and Apple's motions to dismiss Count 2. As discussed below, the very Federal Circuit precedent that Disney and Apple rely on to request dismissal of Count 2 holds that an entity like Disney may not escape infringement liability by contracting with a third party like Apple to perform steps of the invention. That is what Grecia alleges. Disney contracts with Apple to establish the connection with Lucy's iPhone to authorize Lucy's access to "The Incredibles" on her iPhone.

The Court should also deny Apple's motion to dismiss Count 3, the allegation that Apple induces Disney's infringement. Mr. Grecia meets the pleading standard set forth by the Federal Circuit when he alleges the similarity between the '860 claims and the infringements by Disney Movies Anywhere that Apple induces. According to the Federal Circuit, specifically pleading such similarities as Grecia has done here raises the reasonable inference that Apple intends for Disney to infringe the '860 patent.

Finally, the Court should deny Apple's motion to dismiss Grecia's claim of willful infringement. This Court applies the standard that Grecia need only allege Apple's knowledge of the '860 patent at the pleadings stage. He has done this by alleging that Apple cited the '860 disclosure to the Patent and Trademark Office (the "PTO") during Apple's effort to obtain patents covering one of the accused services in this case—iCloud.

### Background

Pertinent to Disney's and Apple's motions to dismiss, Grecia alleges in Count 2 that Disney and Apple jointly infringe the '860 patent claims through the provision of the "Disney Movies Anywhere" service. (Dkt. 89 (2d Am. Compl.) ¶¶ 24-32.)

Pertinent to Apple's motion to dismiss, Grecia alleges in Count 3 that Apple actively induces Disney to infringe the '860 patent notwithstanding Apple's pre-complaint knowledge of the '860 patent. (Dkt. 89 (2d Am. Compl.) ¶¶ 33-42.) Also pertinent to Apple's motion, Grecia alleges in Count 1 that Apple willfully infringes the '860 patent. (*Id.* ¶ 23.)

*Count 2—Joint Infringement Against Disney and Apple*

Grecia alleges that through the joint efforts of Disney and Apple the "Disney Movies Anywhere" service infringes the '860 patent. (Dkt. 89 (2d Am. Compl.) ¶ 25.) For example, claim 1 of the '860 patent is "[a] method for authorizing access to digital content using a cloud system . . . ." (*Id.* ¶ 26.) Grecia alleges that Disney Movies Anywhere "practices a method of authorizing access to digital content—movies—using a cloud computing system." (*Id.*)

The method of claim 1 is one "facilitating access rights between a plurality of devices . . . ." (Dkt. 89 (2d Am. Compl.) ¶ 27.) Disney describes the Disney Movie Anywhere service as facilitating access rights to movies among devices. (*Id.* ¶ 27.)

According to the method of claim 1, a read or write request of metadata of the digital content is received. (Dkt. 89 (2d Am. Compl.) ¶ 28.) This request comprises a verification token, such as, for example, Lucy's email address and password. (*Id.*) Using Disney Movies Anywhere, Lucy would request access to her digital content by requesting that Disney write her email address and password to the metadata of her digital content. (*Id.*)

In claim 1, after Lucy's ownership rights have been authenticated, a connection is established between her iPhone and a server, the connection capable of facilitating a two-way exchange between the device and server relaying the unique identity of the devices for which access to digital content is sought. (Dkt. 89 (2d Am. Compl.) ¶ 29.) After Disney has authenticated Lucy's email and password, Disney establishes a connection between Lucy's

iPhone and Apple's web services by presenting the Apple login screen using Apple's coordinator API: "Connect your iTunes account to sync your eligible Disney and Marvel movies and make your collection grow." (*Id.*)

Next, claim 1 involves the step of requesting an identification reference, such as a unique identifier associated with Lucy's iPhone on which she wishes to access her digital content. (Dkt. 89 (2d Am. Compl.) ¶ 30.) Apple requests an identification reference—Lucy's Apple ID—from the communications console—i.e., Lucy's iPhone. (*Id.*)

Finally, claim 1 involves writing either the verification token (Lucy's Disney username and password) or the identification reference (Lucy's Apple ID) into the metadata. (Dkt. 89 (2d Am. Compl.) ¶ 32.) Apple and Disney write, among other things, Lucy's Disney username and password or her Apple ID into the metadata associated with Lucy's movies, thus authorizing Lucy access to the movies on her iPhone. (*Id.*)

*Count 3—Claim of Inducement Against Apple*

Grecia alleges, "Apple has knowledge of the '860 patent and nonetheless actively induces Disney to directly infringe the '860 patent." (Dkt. 89 (2d Am. Compl.) ¶ 33.) In pleading Count 3 for inducement against Apple, Grecia illustrates Apple's inducement of the Disney infringements by setting forth the elements of claim 1 of the '860 patent and comparing that claim's similarity to the Disney Movies Anywhere service—which is made possible by Apple providing its verified web service iTunes. (*Id.* ¶¶ 34-42.)

*Count 1—Willful Infringement by Apple*

Grecia alleges that Apple's direct infringement of the '860 patent claims is willful. (Dkt. 89 (2d Am. Compl.) ¶ 23.) Grecia bases this allegation on Apple's pre-complaint knowledge of the '860 patent, evidenced by Apple citing the '860 patent disclosure to the PTO as prior art during Apple's attempt to obtain patents covering Apple's iCloud service.

(*Id.*)

**Argument**

*Standard of Review*

"For purposes of evaluating a motion to dismiss, the court 'must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party.'" *Avocet Sports Tech., Inc. v. Garmin Int'l, Inc.*, No. 11-C-04049, 2012 WL 1030031, *1 (N.D. Cal. March 22, 2012) (quoting *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

**I. THE COURT SHOULD DENY THE MOTION TO DISMISS AS TO COUNT 2 BECAUSE DISNEY SHOULD NOT ESCAPE LIABILITY BY CONTRACTING OUT PERFORMANCE OF AN ELEMENT TO APPLE.**

Without any support, Disney and Apple ask the Court to break new ground and hold that their joint efforts to sell the Disney Movies Anywhere service cannot infringe the asserted '860 patent claims. (Disney Mot. at 3-5; Apple Mot. at 3-5.) This request to insulate all joint ventures from direct-infringement liability is in fact contrary to the very precedent that Disney and Apple purport to rely on as "black-letter law" (Disney Mot. at 1; Apple Mot. at 1): "A party cannot avoid infringement, however, simply by contracting out the steps of a patented process to another entity." *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007).

Since *BMC*, numerous lower courts have held that a direct-infringement theory is properly pled, may go to a jury, or support a jury verdict where a defendant contracts with a third party to perform a step of the process or provide a component of the system. *See, e.g., Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 933 (N.D. Ill. 2008) ("[T]he record

indicates that [the defendant] literally contracted out to [the co-defendants] the jukebox hardware element of the asserted claims."); *TGIP, Inc. v. AT&T Corp.*, 527 F. Supp. 2d 561, 578 (E.D. Tex. 2007) ("[The plaintiff] presented evidence that [the defendant] 'controlled or directed' the work that third-parties provided for [the defendant] to perform activation processes.").[1]

Here, Grecia properly pled a joint-infringement claim against the Disney Movies Anywhere service according to *BMC* and its progeny. Grecia alleges that Disney and Apple "pursuant to a contractual or agency relationship" directly infringe claim 1 of the '860 patent through their joint offering of the Disney Movies Anywhere service. (Dkt. 89 (2d Am. Compl.) ¶¶ 24, 25.) Far from the vague allegations of which Grecia stands accused (Disney Mot. at 5; Apple Mot. at 5), Grecia alleges the precise steps of claim 1 of the '860 patent that each of Disney and Apple performs:

- Disney receives the initial access request when Lucy inputs her Disney username and password. (Dkt. 89 (2d Am. Compl.) ¶ 28.)
- Lucy may then complete the authorization process and access her Disney content on her iPhone when Disney and Apple prompt Lucy to enter her Apple ID: "Connect your iTunes account to sync your eligible Disney and Marvel movies and make your [Disney Movies Anywhere] collection grow." (Dkt. 89 (2d Am. Compl.) ¶ 29.)

In short, Disney sells its Disney Movies Anywhere service by contracting out the

---

[1] *See also Clear with Computers, LLC v. Hyundai Motor Am., Inc.*, No. 6:09 CV 479, 2011 WL 2436535, at *3 (E.D. Tex. June 14, 2011) ("[The plaintiff] presented overwhelming evidence that [the defendant] controls the accused website's content, which contains the code that allegedly implements the claims."); *Federal-Mogul World Wide, Inc. v. Mahle GMBH*, No. 11-10675, 2011 WL 4485080, at *11 (E.D. Mich. Sept. 27, 2011) (the plaintiff presented evidence showing "how, when, and in what quantities [the third-party contractor] was to produce the allegedly infringing pistons."); *Ronald A. Katz Tech. Licensing, Ltd. P'Ship v. Echostar Satellite, LLC (In re Katz Interactive Call Processing Patent Litigation)*, Nos. MDL 2:07-ML-1816, 2010 WL 8759120, *6 (C.D. Cal. Dec. 3, 2010) ("[T]he plaintiff has presented evidence that [the defendant] contracted with [a third party] to perform the exact function required by the claim—credit verification.").

second authentication step—establishing a connection with a verified web service (i.e., iTunes). (Dkt. 89 (2d Am. Compl.) ¶ 29.) It bears emphasis that this is the very conduct that the Federal Circuit held could support liability for direct infringement: "A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity." *BMC Resources, Inc.*, 498 F.3d at 1381.

The cases Disney and Apple rely on do not involve a venture operating jointly to offer a service like Disney Movies Anywhere, but rather these cases involve the end user performing a step or contributing a component to the invention. *Centillion Data Sys. LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1287 (Fed. Cir. 2011) ("[The defendant] in no way directs its customers to perform nor do its customers act as its agents."); *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329-30 (Fed. Cir. 2008) (holding that an inputting step by the end user (the bidder) could not be combined to hold the service provider (auctioneer) liable for direct infringement); *BMC Resources, Inc.*, 498 F.3d at 1382 ("[T]he record contained no evidence even of a contractual relationship between [the defendant] and the financial institutions."); *Joao Control & Monitoring Sys. of Cal. v. Sling Media, Inc.*, No. C 11-6277 EMC, 2012 WL 3249510, at *7 (N.D. Cal. Aug. 7, 2012) ("[T]hat contractual relationship does not *obligate* customers to do anything under [the defendant's] control, nor does it mandate any action by customers *on behalf of [the defendant]*.") (emphasis in original).[2]

---

[2] In *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F. Supp. 2d 527, 534 (D. Del. 2011), the court rejected the plaintiff's argument that "parties are not required to plead anything more than the standard for direct infringement" when pleading a joint-infringement theory. This case is different, because Grecia has alleged a contractual or agency relationship between Disney and Apple according to which the parties together sell the Disney Movies Anywhere service to the end user. (Dkt. 89 (2d Am. Compl.) ¶¶ 24, 25.) Furthermore, Grecia alleges specifically which steps each party is responsible for according to their relationship. (*Id.* ¶¶ 28-31.)

Disney (Mot. at 5) and Apple (Mot. at 4) misunderstand the following Federal Circuit guidance as applying to this case: "A patentee can usually structure a claim to capture infringement by a single party." *BMC Resources, Inc.*, 498 F.3d at 1381. The '860 claims read on the actions of single parties. For example, Grecia has accused the Apple service iCloud of infringing the '860 claims based on the conduct of Apple alone. (Dkt. 89 (2d Am. Compl.) ¶¶ 12-23.) To accuse Disney Movies Anywhere of infringing the '860 patent claims, however, Grecia must necessarily include Apple's conduct because Disney has contracted out to Apple the performance of the step of establishing a connection with a verified web service. (*Id.* ¶ 29.)

As discussed above and demonstrated by the Second Amended Complaint, Grecia's joint-infringement allegations are not vague. (Disney Mot. at 5; Apple Mot. at 5.) Instead, Grecia alleges that Disney and Apple sell the Disney Movies Anywhere service together pursuant to a contractual or agency relationship and alleges exactly who is responsible for each step of delivering the Disney Movies Anywhere service according to that relationship. (Dkt. 89 (2d Am. Compl.) ¶¶ 24-32.) In sum, Grecia's allegations of joint infringement bear no resemblance to the allegations dismissed in the cases Disney and Apple rely on here.[3]

---

[3] *Brandywine Commc'ns Tech., LLC v. Casio Computer Co. Ltd.*, 912 F. Supp. 2d 1338, 1351 (M.D. Fla. 2012) (Plaintiff's conclusory allegation reproduced at 1350: "[The plaintiff] has failed to sufficiently identify which of [the defendant's] products are involved in joint infringement, or to adequately allege that [the defendant] exerts control and direction over Verizon such that the entire patented process can be attributed to [the defendant]."); *Nu Flow Tech. (2000) Inc. v. A.O. Reed & Co.*, No. 13-CV-1818 BEN, 2014 WL 1400127, at *3 (S.D. Cal. April 8, 2014) ("[The plaintiff] does not set forth any factual allegations in support of its assertions that [the defendants] 'acted in concert.'"); *Friday Group v. Ticketmaster*, No. 4:8CV01203 JCH, 2008 WL 5233078, at *3 (E.D. Mo. Dec. 12, 2008) ("Notably absent from Plaintiff's Complaint and Memorandum, however, is any indication as to which defendant exercises this direction and control.").

Disney and Apple inaccurately portray the record in order to support their request for a with-prejudice dismissal. It is simply not the case that Apple filed its first motion to dismiss in this Court "[a]fter Grecia refused to withdraw its [sic] original inducement and contributory infringement claims . . . ." (Apple Mot. at 2.) What actually happened was that Mr. Grecia notified Apple before Apple filed its first motion to dismiss in this Court that he would likely be amending the complaint to include the recently launched Disney Movies Anywhere service. (Ex. 1 (Wawrzyn Decl.) ¶ 3.) Grecia also informed Apple that he would amend the complaint in view of the Apple motion to dismiss that had been filed but never ruled upon in the Northern District of Illinois, where the case was originally pending. (*Id.*). In short, this case is unlike *Joao Control & Monitoring Sys. of Cal.*, 2012 WL 3249510, at *9, where the Court had actually considered two rounds of motions to dismiss and, therefore, declined to grant leave to further amend the complaint. Here, this is the first motion to dismiss that the Court is considering.

## II. THE COURT SHOULD DENY APPLE'S MOTION TO DISMISS WITH RESPECT TO COUNT 3 BECAUSE GRECIA ADEQUATELY ALLEGES APPLE'S KNOWLEDGE AND THE SIMILARITIES BETWEEN THE ASSERTED CLAIMS AND DISNEY MOVIES ANYWHERE.

Grecia has properly pled Count 3, the inducement claim against Apple, because Grecia alleges the similarities between the '860 claims and the service that is responsible for the infringement that Apple allegedly induces—Disney Movies Anywhere. (Dkt. 89 (2d Am. Compl.) ¶¶ 33-42.)

This Court recently distilled the guidance provided by the Federal Circuit with respect to the pleading requirements for indirect infringement by inducement:

> In finding the plaintiff therein had adequately stated a claim for induced infringement, the Federal Circuit considered the plaintiff's allegations describing the defendants' communications with customers, found the defendants'

> statements regarding the benefits of their products closely resembled the benefits of the method disclosed in the patent, concluded a reasonable inference could be drawn that the defendants intended their customers to infringe, and held that the plaintiff had stated a claim for induced infringement.

*Infineon Tech. AG v. Volterra Semiconductor Corp.*, No. C-11-6239 MMC, 2012 WL 3939353, *4 (N.D. Cal. Sept. 10, 2012) (denying motion to dismiss and applying *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing System Patent Litigation)*, 681 F.3d 1323 (Fed Cir. 2012)).[4]

This case is like *R+L Carriers* and *Infineon*, where the alleged similarities between the asserted claims and the induced infringement raised the inference that the defendant intended to induce infringement. Here, Grecia pleads, "Apple has knowledge of the '860 patent and nonetheless actively induces Disney to directly infringe the '860 patent." (Dkt. 89 (2d Am. Compl.) ¶ 33.) In support of the inducement count, Grecia then alleges the similarity between the '860 claims and how Apple and Disney together sell the Disney Movies Anywhere service to the public. (*Id.* ¶¶ 35-42.) Grecia has met the pleading standard enunciated by the Federal Circuit: "[T]here is no requirement that the facts alleged mimic the precise language used in a claim; what is necessary is that the facts, when considered in their entirety and in context, lead to the common sense conclusion that a patented method is being practiced." *R+L Carriers*, 681 F.3d at 1343.

Apple accurately reports that inducement liability may arise only if there is a direct infringement. (Apple Mot. at 5 (citing *Limelight Networks, Inc. v. Akamai Techs., Inc.*, No. 12-0786, 2014 WL 2440535, at **4-5 (U.S. June 2, 2014).) For the reasons stated above at 5-9,

---

[4] *See also AntiCancer, Inc. v. Fujifilm Medical Sys. U.S.A., Inc.*, 745 F. Supp. 2d 1165, 1171 (S.D. Cal. 2010) ("[The plaintiff] has alleged [the defendant] advertises the infringing use and instructs its customers on how to use the patent to infringe.").

however, Grecia has properly alleged that Disney directly infringes the '860 patent by contracting out to Apple's iTunes service the step of connecting with a verified web service.

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009), is of no help to Apple. (Mot. at 6.) There, the court of appeals affirmed summary judgment of no inducement. *Id.* at 1328-29. Putting aside that *Vita-Mix* has nothing to do with the Rule 12 pleading standard that governs Apple's Motion, the plaintiff there apparently had an exceedingly weak inducement claim that nonetheless had made it past the pleadings stage: "Indeed, the record is devoid of actual evidence establishing specific intent to encourage customers to infringe the #021 patent." *Id.* at 1328.

### III. THE COURT SHOULD DENY THE MOTION TO DISMISS BECAUSE APPLE'S WILLFUL INFRINGEMENT IS ADEQUATELY PLED.

Mr. Grecia adequately pled willful infringement by Apple because he "make[s] out the barest factual assertion of knowledge of an issued patent." *IpVenture, Inc. v. Cellco P'ship*, No. C 10-04755 JSW, 2011 WL 207978, at *2 (N.D. Cal. Jan. 21, 2011). Grecia alleges that Apple has knowledge of the '860 patent because Apple cited the disclosure of the '860 patent to the PTO during Apple's attempt to obtain patents covering iCloud. (Dkt. 89 (2d Am. Compl.) ¶ 23.) That is enough of a factual assertion of Apple's knowledge of the '860 patent to satisfy this Court's pleading standard.

Apple mistakenly asks this Court to hold Grecia to the standard of proof at trial at the pleading stage. Indeed, Apple relies on *K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364 (Fed. Cir. 2012) and faults Grecia for not alleging facts to suggest that Apple "acted despite an objectively high likelihood that its actions constituted infringement of a valid patent" and "this objectively defined risk was either known or so obvious that the accused infringer should have known about it." (Mot. at 7 (quoting *K-Tec*).) But *K-Tec* was an appeal from a

jury verdict finding that the defendant willfully infringed. *Id.* at 1378. Nowhere in that decision does the Federal Circuit hold or even suggest that the plaintiff must plead according to the standard that Apple misguidedly asks this Court to adopt.

Apple's reliance on *Bascom* is misplaced. (Mot. at 7.) In that case, the plaintiff did not respond to the defendant's argument that the *K-Tec* standard applied at the pleadings stage, and thus the Court held that "it appears that [the plaintiff] concedes that it cannot state a claim for willful infringement against [the defendant]." *Bascom Research LLC v. Facebook, Inc.*, No. 12-cv-6293-SI, 2013 WL 968210, at *6 (N.D. Cal. Mar. 12, 2013). Obviously, Grecia is not conceding this point; he argues that this Court's pleading standard as set forth in *IpVenture* applies here and that his allegations meet this standard.

## Conclusion

William Grecia respectfully requests that the Court deny Disney's and Apple's motions to dismiss.

Date: July 10, 2014

Respectfully Submitted,

/s/ Matthew M. Wawrzyn

John Mansfield (Bar #214848)
john@mansfieldlaw.net
**MansfieldLaw**
1001 Bayhill Dr., 2nd Floor
San Bruno, CA 94066
(971) 271-8615

Matthew M. Wawrzyn (admitted *pro hace vice*)
matt@wawrzynlaw.com
Stephen C. Jarvis (admitted *pro hac vice*)
stephen@wawrzynlaw.com
233 S. Wacker Dr., 84th Floor
Chicago, IL 60606
(312) 283-8330

*Counsel for William Grecia*