Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE EDWARD M. CHEN

WILLIAM GRECIA,                          )
                                         )
          Plaintiff,                     )
                                         )
  VS.                                    )  No. C 14-0775 EMC
                                         )
APPLE INC. and ABC, INC. d/b/a           )
WALT DISNEY STUDIOS MOTION               )
PICTURES,                                )
                                         )
          Defendants.                    )
_____  )
                                         )
WILLIAM GRECIA,                          )
                                         )
          Plaintiff,                     )
                                         )
  VS.                                    )  No. C 14-0969 EMC
                                         )
SONY NETWORK ENTERTAINMENT               )
INTERNATIONAL LLC,                       )
                                         )  San Francisco, California
          Defendant.                     )  Thursday
_____  )  August 28, 2014

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff**:          Wawrzyn LLC
                            233 South Wacker Drive
                            Willis Tower, 84th Floor
                            Chicago, Illinois 60606
                       **By:  Matthew Michael Wawrzyn, Esquire**

(Appearances continued on next page)

**Reported By:**    *Katherine Powell Sullivan, CSR #5812, RPR, CRR*
                    *Official Reporter - U.S. District Court*

**APPEARANCES (CONTINUED)**:

| | | |
|---|---|---|
| **For Defendant**<br>**Apple:** | | Kirkland & Ellis LLP<br>333 S. Hope Street, 30th Floor<br>Los Angeles, California 90071 |
| | **By:** | **Luke Lucien Dauchot, Esquire** |
| **For Defendant**<br>**Sony:** | | Kilpatrick Townsend and Stockton LLP<br>Two Embarcadero Center, 8th Floor<br>San Francisco, California 94111 |
| | **By:** | **James G. Gilliland** |
| | | Kilpatrick Townsend and Stockton LLP<br>1080 Marsh Road<br>Menlo Park, California 94025 |
| | **By:** | **Scott Kolassa, Esquire** |

P R O C E E D I N G S

**AUGUST 28, 2014**                                      **2:53 P.M.**

          **THE CLERK:**  Calling 14-0775, Grecia vs. Apple, Inc., 14-0969, Grecia vs. versus Sony Network Entertainment International, LLC.

     Counsel, please state your appearances for the record.

          **MR. WAWRZYN:**  Good afternoon, Your Honor.  Mat Wawrzyn for plaintiff.

          **THE COURT:**  All right.  Thank you, Mr. Wawrzyn.

          **MR. DAUCHOT:**  Good afternoon, Your Honor.  Luke Dauchot here on behalf of Apple.

          **THE COURT:**  Thank you, Mr. Dauchot.

          **MR. GILLILAND:**  Your Honor, James Gilliland and Scott Kolassa, of Kilpatrick Townsend, for Sony Network Entertainment.

          **THE COURT:**  All right.  Thank you.

     Okay.  We have a couple motions on this afternoon.  First of all, there's the -- Grecia's motion to dismiss Sony's counterclaims.  And so let me tell you where I see things in that regard.

     First of all, with respect to the declaratory judgment counterclaim for non-infringement and the affirmative defense of non-infringement, I agree with Judge Alsup that that sort of tracks the requisite pleading standards for the affirmative claim of infringement.  It seems to me that kind of symmetry is

fair.

And to the extent that the Federal Circuit, in the *Bill of Lading Transmission* case, tells us that we are still governed by Form 18, notwithstanding *Twombly* and *Iqbal*, that continues to be the standard and, therefore, I would deny the motion to dismiss the counterclaim for declaratory judgment on non-infringement.

Now, I understand that there's been, allegedly, more articulated beyond Form 18 standards in the complaint, but I think the reasoning here is that we're looking at what is required, not necessarily what was pled.

And so if the standard -- it's a standard that is symmetrical, not the actual application of that standard. So that applies to striking the second affirmative defense of non-infringement.

The motion to strike the fourth affirmative defense, for prosecution history estoppel, my view is that prosecution history estoppel is not an affirmative defense. It is a doctrine that is used in the context of claim construction and can serve to limit the application of doctrine of equivalents.

But, you know, I'm not sure it's important. I don't see it as an affirmative defense per se. And so I would be inclined to strike that but without prejudice to it being raised on the merits.

That's where it's going to come up, when we have a claim

construction.  So it's going to -- I suspect it will come up either way.  I don't know if we need an affirmative defense nestled in there.

Now, the sixth affirmative defense, for improper inventorship, as I understand it, things have evolved now. Plaintiff has withdrawn their request to dismiss because there are now invalidity contentions that have been promulgated.

**MR. WAWRZYN:**  So that would be with respect to -- I believe it's the second counterclaim on invalidity.

But with respect to the improper inventorship -- okay, I see that.  I see your point, Your Honor, that that meshes with the invalidity contentions.  And so the defense specifically --

**THE COURT:**  Right, right.

**MR. WAWRZYN:**  Okay.

**THE COURT:**  So I thought that was, kind of, now moot.

**MR. WAWRZYN:**  Okay.  And I agree.

**THE COURT:**  Okay.  Good.

Then the seventh affirmative defense, of unclean hands, it's also been clarified that that is also based on the inventorship question.  Do I have that right?

**MR. KOLASSA:**  That's correct.

**THE COURT:**  So it's kind of the same thing.  I mean, unless there's an attempt to state a broader basis for unclean hands, right now it is devoid of any factual allegation.  So I could technically say, well, strike it with leave to amend.

Perhaps that could clean things up.  I guess that's what I want to find out.

Is there anything other than the inventorship issue that comprises the unclean hands defense?

**MR. KOLASSA:**  So there is one other thing that has come up, that goes towards the concept of unclean hands, and it actually is reflected in the letter that was attached as an exhibit to a declaration in the reply.

And that is the notion that the plaintiff is asserting the claims of this particular patent against a technology that has not changed since long before the patent -- the application for the patent in question was even filed.

That is to say that, as a result, the plaintiff -- sorry, the patent would either be necessarily invalid or not infringed.

And an investigation into what existed prior to the -- basically looking at the accused product, knowing from public information that it's the same thing that was previously branded as a PlayStation Network, and then still asserting against something that was out there and in the -- out there and in use long before the earliest possible priority date the plaintiff could claim is an unclean hands kind of approach.

**THE COURT:**  Well, I understand your argument, and I guess you're talking about Rule 11 and a few other things.  And that may go to the merits of defeating any infringement claim.

I'm not sure that constitutes unclean hands within the typical conventional notion of unclean hands.  I mean, it's not a misrepresentation in front of the PTO, for instance, or something that was done in the patent prosecution.  It's misuse in the litigation -- in this litigation.

**MR. KOLASSA:**  Correct.  And, actually, if I recall correctly, and I can take a quick look, but that defense, as it was articulated in the answer, was -- included not just unclean hands but also misuse.

**THE COURT:**  So there's misuse.

**MR. KOLASSA:**  Yes.  So let me just take a quick look here.

Yes.  So that defense, as it was articulated, includes patent misuse.

**THE COURT:**  Well, okay.  I do see that now.

So then in that case I do think it's the kind of thing that requires some meat on the bones.  And if you want to pursue, you know, patent misuse or still want to pursue unclean hands based on inventorship issues, I think it's fair to require some specificity in that regard, some factual description so we know what it is.

I mean, a lot of this will be moot soon as we go through various contentions in discovery.  But I think that is the one where I would grant the motion with leave to amend.

All right.  And then we get to, I think, the kind of

tougher question, the next motion, which is the -- Apple's motion to dismiss the willful infringement claim.  And here I don't think there's any serious question that the allegations sufficiently allege that Apple had knowledge of the '860.  At least that's alleged.

The question is whether Apple knew or should have known of an objectively high risk that its actions would infringe on a valid patent.  And there's where I'm -- it's not clear to me what -- in this kind of situation, sort of, what more could one allege.

Is there stuff -- I mean, what's the argument here that -- I mean, you've got to be reasonable in terms of --

MR. DAUCHOT:  Well, it's a fair question, Your Honor. But if we take a step back, the original willfulness standard, the *Underwater*, if you will, *Devices* case standard was exactly that.  If you had knowledge of a patent, that knowledge triggered a duty to investigate.  It's essentially a negligence duty.  So if that were still the standard, the applicable standard, this allegation would likely suffice.

But the standard has changed.  The standard, as Your Honor pointed out, under *Seagate*, is now a two-prong standard.

One, an objective standard which is an objective -- a situation where someone acted in view of an objectively ascertainable high likelihood of infringement of a valid patent.

And then the subjective prong:  Someone acting with knowledge of that high likelihood or in reckless disregard of that high likelihood.

That's the new standard.

THE COURT:  Uh-huh.

MR. DAUCHOT:  And we have cited to a number of cases from a pleading perspective that require that -- that we have allegations that meet that factual -- that meet that standard.

We have one case in particular, that we cite from the Central District of California, the *CalWave* case -- or, I'm sorry, it's the *My Medical* case that basically stands for the proposition, regardless of whether or not the accused infringer knew of the patent, the question is:  Are there facts in the complaint that set forth the -- you know, the rest of the standard under *Seagate*?

Simply saying you knew of a patent is not enough under the new standard.  And so what could we expect the plaintiff to plead?  Well, under what circumstances was this patent known? Who knew about it?  Was the knowledge of this patent associated with the particular functionality that's targeted in this case?

And we could -- you know, we could go on and on, but --

THE COURT:  But isn't that almost like requiring a preview of the merits?  I mean, it's like taking Form 18 and making a super showing that not only is there a claim of infringement but there's a claim of such a likely infringement

that the defendant should have known, and now I'm going to require you to lay out your cards and here's -- you know, here's the -- almost the preliminary infringement chart, or something, to show how it reads so closely that they should have.  I mean, is that something that would be required if we impose an elevated pleading requirement?

MR. DAUCHOT:  No, I don't think so.  And to be clear, Your Honor, it's not an elevated pleading requirement.  It is -- it's really a *Twombly* requirement that we have facts alleged that track the legal requirement.

THE COURT:  So what kind of facts in a case like -- I mean, you can allege facts about who knew about it.  And that's fine.  That doesn't get you to the high likelihood of infringement.  That's the -- that's the high risk of infringement, is the thing I'm talking about.  In order to do that, you have to get into some merits analysis.

MR. DAUCHOT:  Well, I don't think you do, Your Honor. What you -- what you need to allege is -- first of all, from the high likelihood of infringement, I would assume that a plaintiff would point to its allegations and say, look, here's the functionality that infringes -- that we allege to infringe. And here is knowledge of a patent that the defendant had in the context of the functionality that we've accused.

The only thing we have in this case -- and, by the way, there may be -- you know, on top of the -- the knowledge of the

patent in the context of the functionality that's accused, you know, there could be other facts, such as the timing.

When did you know of the patent?  How long after the patent or before the patent issued was the accused functionality commercialized?

**THE COURT:**  That doesn't inform the high likelihood analysis.

**MR. DAUCHOT:**  Well, it certainly does inform the subjective prong.

**THE COURT:**  Yeah.

**MR. DAUCHOT:**  And those are -- and, Your Honor, we do have cases out there.  I mentioned the Central District of California case.

There's a recent case out of Delaware, which we did not cite in the briefing.  It's an unpublished opinion.  But I'm -- I have copies here for Your Honor as well as opposing counsel.

But, you know, in that case we have the District of Delaware ruling that, you know, simply pre-suit knowledge of a patent, by virtue of having that patent cited in some prosecution, doesn't suffice.  You need more.

This is a decision by Judge Andrews.  Your Honor, I'm happy to provide copies to the Court now or later.

**THE COURT:**  Why don't you hand it up to me now.

**MR. DAUCHOT:**  Sure.  I'll pass up three copies of that.

Now, there's one additional case that I'd like to bring to the Court's attention, now, in that -- that was not cited in the briefing. And that's the *Cordance vs. Amazon* case. It's a July 27, 2009, case. The cite is 639 F.Supp.2d 406.

Now, in fairness to the Court and counsel, this was a summary judgment case. But the case is instructive in that it explains the difference between the *Underwater Devices* standard that preceded *Seagate* and the new standard brought forth in *Seagate*, and the consequences of the difference in standard.

One of the consequences -- yes, albeit on summary judgment -- was that merely relying on the fact of pre-suit knowledge of a patent did not suffice. And there's an extensive discussion about that in the case.

And so the point here, Your Honor, is simply saying you knew of the patent before this lawsuit was filed --

**THE COURT:** Well, they give some facts to show you knew. It wasn't just a bald allegation.

**MR. DAUCHOT:** Oh, no. Well, alleging you knew about it and even pointing to facts that you knew about it really doesn't get you beyond the old willfulness standard. We have a new willfulness standard under *Seagate*.

And the cases -- the case that I handed to Your Honor, as well as the *Cordance* case that I just alluded to and the Central District of California case that I noted, all stand for the proposition that given the new pleading -- or given the new

standard, simply saying that you knew of the patent --

THE COURT:  Where in this *CallWave* case does it talk about the specificity -- that's what you're talking about.  You want *Twombly* specificity on willfulness on the question of high likelihood of infringement.  Where --

MR. DAUCHOT:  Well, the case -- the case doesn't address that particular issue, but it does say simply alleging that you knew of the patent by virtue of having cited to it in a patent application is not enough.  And that proposition is, I think, Your Honor, on the second page of the opinion.

Let me pull up my copy.

THE COURT:  This says it's not enough, generally, to allow allegations of willfulness based solely on conduct postdating the filing of the original complaint without, you know, the benefit of a pre-suit letter.  It's timing.

MR. DAUCHOT:  If we look at the third page, Your Honor, first full paragraph.

THE COURT:  Okay.

MR. DAUCHOT:  "The only other willfulness issue is that as early as 2008, Google had knowledge of one of the patents, the '970 patent, as evidenced by citation to the patent in multiple information disclosure statements relating to Google patents.  This solitary piece of information is insufficient to support an allegation of willfulness."

And that's what we have here.

**THE COURT:**  It would be helpful if it said what would be sufficient.  I'm not sure exactly --

**MR. KOLASSA:**  Well --

**THE COURT:**  Because there was nothing about the likelihood of the recklessness --

**MR. DAUCHOT:**  Well, I'll point the Court to the Central District of California case I noted.  And this is the *My Medical* case.  It's not reported in F.Supp, but we do have it cited in the briefing.  And we have the Westlaw cite.  But I quote, "Regardless of whether a plaintiff must plead pre-suit knowledge to state a willful infringement claim, MMR has not alleged any facts establishing an objectively defined risk that Allscripts' actions infringe MMR's patents or that the risk was known or so obvious that it should have been known to Allscripts."

And so we have a second Court basically stating you need more than simply saying you knew of the patent before suit was filed.

**THE COURT:**  I go back to my original question.  What would suffice?

It seems like you'd have to get into the likelihood of infringement, which means you have to get into, sort of, the merits and almost even before we get into infringement contentions and all that --

**MR. DAUCHOT:**  Well, you don't, Your Honor.  We're not

here to debate the merits of the infringement issue.  What we're here to debate -- again, we have an objective prong and a subjective prong.

        THE COURT:  Yeah.

        MR. DAUCHOT:  And what the Court seems to be focusing on is the objective prong.  And that is, did the defendant -- was there an objective basis, objectively speaking -- let me reword that.  Is there a high likelihood of infringement? Let's move beyond that.  Let's look at --

        THE COURT:  Well, before we move beyond that, what's your position?  Is a, quote, conclusory allegation that that exists enough?  Or do you have to put some meat on the bones, as the plaintiff/patent-holder, that, well, yeah, here's why it was objectively reckless:  A, B, C, D, E.

    If you look at the elements and -- you look at the elements of the claim and you look at the accused device, you can see it reads right on it, pretty obvious.

    I mean, then --

        MR. DAUCHOT:  That's my point --

        THE COURT:  -- then you do get into a preliminary merits analysis, which I don't think, particularly in light of, you know, *Bill of Ladings*, I'm not sure we get into that at this stage.

        MR. DAUCHOT:  I agree.  But, again, on the objective prong, I agree with you, Your Honor.

THE COURT:  Okay.

MR. DAUCHOT:  It would be tough for -- you know, it would be -- I think it would be difficult for a defendant to stand before you and say that the plaintiff cannot possibly meet the objective prong without, in the complaint, laying out a case not only that they're, you know, making ordinary allegations of infringement but alleging that, boy, these are terrific allegations and so terrific that, from an objective standpoint, there would be a high likelihood of infringement to anyone.

THE COURT:  Right.

MR. DAUCHOT:  Now, maybe there would be facts available to a plaintiff to be able to make a case of -- along those lines.  But the more important part here is on the subjective side.

THE COURT:  Okay.

MR. DAUCHOT:  Now, what we have the plaintiff saying is the patents -- the '860 patent was cited by Apple in a patent application, to use plaintiff's phraseology, associated with iCloud.

And they make the point, well, iCloud is the accused device here.  Ergo, we have the subjective -- we've pled some specificity as to the subjective prong.

And what I submit here, Your Honor, is that that's not enough.  I mean, first of all, you know, a patent does not --

you know, is not iCloud.  What in the patent application is the plaintiff referring to?  What functionality in the patent application does plaintiff point to as being related to the '860 patent being -- being asserted here?

And those types of allegations, I submit, Your Honor, are necessary to at least put some meat, some flesh around the naked allegation right now that Apple proceeded either in reckless disregard of a high likelihood of infringement or knowing full well of a high likelihood of infringement.  But those facts are missing.

And if the plaintiff wants to take the position that this is created by virtue of us citing the patent in an application that plaintiff, loosely in the papers, knows is related to iCloud, okay, that's not pled.  And that should be pled.

And if plaintiff wants to point to some functionality in that application and explain how that functionality is associated with the infringement allegations here, and why that association creates reckless disregard of a high likelihood of infringement, fine.  But that needs to be pled.  And Apple is entitled to that sort of pleading from the standpoint of fair notice.

THE COURT:  Well, what about the fact that its allegations on the claim of infringement against Apple -- I mean, it does go pretty far beyond the normal Form 18.  I mean, it does describe which claim of which patent.

It's quite specific.  And it does talk about -- a bit about the method of claim one, what it does, et cetera.  I mean, there is some description here.

MR. DAUCHOT:  Oh, there's no doubt.  I mean -- and we're not challenging the pleading on that basis.  We're not moving to dismiss the --

THE COURT:  Why isn't that enough to -- it's more than, apparently, what was alleged in the *CallWave* case.  I mean, there is some degree of specificity here that --

MR. DAUCHOT:  Well, the *CallWave* case, I mean, that case addresses the issue of willfulness.  And, again, we are not challenging the sufficiency of the allegations as to the direct infringement claims.

But plaintiff is alleging that Apple acted in -- you know, in willful disregard of its -- of its patent rights under the standard of *Seagate*.  Those are serious allegations.  Those are serious allegations with serious consequences.

And if the plaintiff wants to go down that road, Apple is entitled to notice of exactly what -- or at least some notice of the basis for the statement that there is a -- an actual disregard or a reckless -- you know, actual activity despite that knowledge, or activity in reckless disregard of the knowledge.

THE COURT:  All right.  Let me hear --

MR. DAUCHOT:  Those facts are absent.

**THE COURT:** Let me hear your response.

**MR. WAWRZYN:** Thank you, Your Honor.

First, on the law, the *Seagate* case is not a Rule 12 case. The Federal Circuit wasn't reviewing dismissal.

In -- I believe it's the *Katech* case, another Federal Circuit case, that standard was enunciated -- re-enunciated in *Seagate* where the Federal Circuit was reviewing a jury verdict finding of willfulness.

The fact is that in this court, the *IP Ventures* case, Judge White held that the barest factual assertion of knowledge of the patent is the Rule 12 standard. And, certainly, we've met that.

But going beyond that, Mr. Dauchot states that what Apple would like to see in the pleading is, one, knowledge; and then, two, for the subjective prong, some specificity.

But, as Your Honor acknowledges, our complaint is not a Form 18 complaint but, rather, alleges the specific claims that are asserted in this action and then walks through, as an illustration, the infringement of the method claim 1.

And so, you know, to sum it up, the law is clear on the standard in this court. We've met it. And even if the standard were different, as represented by Apple, we meet that standard, as well, by not doing Form 18 pleading.

**MR. DAUCHOT:** Your Honor, if I just may be heard on --

**THE COURT:** Very shortly.

**MR. DAUCHOT:**  -- a point here.

The *IP Venture* case does not stand for the proposition that plaintiff represents it to stand for.

In the *IP Venture* case, what the Court basically holds is that the pleading is deficient.  And, in so ruling, the Court notes that there wasn't even pre-suit knowledge of the patent alleged.  But the Court does not go so far as to say if you had done that you'd be fine.

And, again, Your Honor, that really can't be the case because to make that the case is to erase the distinction between the new *Seagate* willfulness standard and the one that preexisted it.

**THE COURT:**  All right.  Well, I'm aware of the standard that now obtains and the heightened standard that's been applied substantively.  That does not necessarily dictate what the pleading standard is under Rule 8.

I find that the allegations of willful infringement are sufficient here.  There is a very specific allegation as to how Apple allegedly knew of the '860 patent pre- -- well, its knowledge and how that came to be in terms of proven by its disclosure of the '860 as prior art.

There is also a fair description -- or fairly detailed description of the substance of the infringement claim.  And to require much more than that, in terms of showing the objective prong, would, I think, put the cart before the horse and is not

appropriate here.  So, I do believe, the standard has been met.

I will also note that in the *Sealant Systems International* case that was decided in 2012 by Judge Grewal, he notes that, you know, a complaint of probably, I think, even less detail here is sufficient and that the issue of likelihood -- objectively high likelihood of infringement is a matter to be decided after appropriate discovery in this case.

And we will get there quick enough through the discovery process in terms of getting towards any factual bases as this case unfolds.

So I'm going to deny that motion to dismiss.  And as I've noted earlier, I am going to require the one amendment to the one affirmative defense.  So I think the pleadings are more or less settled.

And what I'd like to do is talk about case management and where we go from here now that I have -- I have related the case from Judge Donato.  And I know there's a pending motion there which I intend to deal with.  I may not need oral argument on that, but I realize, now, that I've got some disparate tracks because this case is well underway with our rolling down the track of a claim construction as well as some other things.  And now we've got another late-arriving train.

So what do we do?  I think someone at Apple suggested you meet and confer and come up with a revised schedule.  It does make sense to try to consolidate the claim construction.

I don't want to go through two different claim constructions.  And yet I don't want to delay this case.  But it did seem to me that the cases were related and perhaps at the expense of a couple of months makes sense to try to do this in a unified way.

Any thoughts on that?

**MR. DAUCHOT:**  And just to be clear, I do think Sony and Apple and the plaintiff agree that if the Court consolidates the new case along with this one for purposes -- or through claim construction, that it makes sense to -- I don't mean to speak for Sony --

**MR. GILLILAND:**  Absolutely.

**MR. DAUCHOT:**  It makes sense to put everything on hold.

**THE COURT:**  And if you could then come up with a new schedule, assuming they get onboard and they get, for instance, their invalidity contentions and infringement contentions underway, and that gets done over the next couple months, hopefully we can get back on track and get this on.

So I don't know if you had a chance -- well, I guess, you need everybody onboard.

**MR. WAWRZYN:**  Your Honor, based on Judge Donato's inclination to grant the motion to dismiss, we intended to amend.  And Judge Donato also was inclined to give us leave to amend.

And so our plan was to file the amended complaint early next week and -- and then follow the patent local rules as far as those disclosures.  That was the proposal we had, which, generally speaking, this new case would be caught up to where Apple and Sony are in December.  And we could have a case management conference then is what we were proposing.

THE COURT:  And by then you'll have a timeline proposed for claim construction.

MR. WAWRZYN:  Yes.

THE COURT:  Well, let's do that.  I will indicate to you that I've looked at -- I'm familiar with Judge Donato's early work in this matter, and in all likelihood I would concur.  So you're on the right track.

MR. WAWRZYN:  Okay.  All right.

(Laughter)

THE COURT:  So don't stop doing what you're going to do.

MR. WAWRZYN:  Okay.  All right.

THE COURT:  So let's -- why don't we set a status conference date.  And in advance of that, if you could get me your proposed schedule and see if we can get this claim construction process rolling as quickly as possible.

Early December?

THE CLERK:  December 4th.

THE COURT:  4th?

THE CLERK:  Yes.

THE COURT:  All right.

THE CLERK:  At 10:30.

THE COURT:  At 10:30 for status conference.  And then we're going to set the claim construction process.  And I'm going to assume it's going to be fairly expedited at that point.  That is, since you've gone this far, that we're not going to set it out for, like, months later.  It's going to happen pretty quickly.

MR. DAUCHOT:  Your Honor, if I could ask for a favor.  The first week of December is likely a week where I will have an appellate argument.  I don't know which date.  I'm not on their calendar yet, but I suspect that I will land on their calendar.

THE COURT:  Let's do it on the 11th then.

MR. DAUCHOT:  That would be terrific, Your Honor.

THE COURT:  Okay.  Let's change it to the 11th at 10:30.

I also see that there has been some mediation.  At least in the Apple case, mediation has been selected and that process is starting.

MR. WAWRZYN:  Yes.  And in the Sony case we have a mediator appointed and a date set.  October 21st.

THE COURT:  All right.  So I will assume that any mediation will be completed in those two matters before the

next CMC in this case, right?

**MR. GILLILAND:**  Will be for Sony, yes.

**MR. DAUCHOT:**  And we expect it to be for Apple as well.

**THE COURT:**  All right.

**MR. DAUCHOT:**  One additional item, Your Honor.  We -- we may be filing an IPR with respect to the patent here.  It has not yet been filed.  But I just want to put the Court on notice of that as soon as possible.

**THE COURT:**  Okay.

**MR. DAUCHOT:**  Exactly when that will happen and what the position will be with respect to a stay are still unknowns, but --

**THE COURT:**  All right.

**MR. DAUCHOT:**  But in the interest of full disclosure --

**THE COURT:**  I appreciate that.

And in the interest of full disclosure, this came up in another patent case yesterday and the issue was, well, we're going to file an IPR and we're going to ask for, probably, another stay.

And my response is, well, I seriously look at stays once IPR is granted.  Before then --

(Laughter)

**MR. DAUCHOT:**  Well, I appreciate the heads-up, Your

Honor.

THE COURT:  Anyway, that's my general disposition.  Of course, I keep an open mind on everything.

MR. DAUCHOT:  Understood.

THE COURT:  All right.  We'll see you in December.

(Counsel thank the Court.)

(At 3:28 p.m. the proceedings were adjourned.)

- - - -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Thursday, September 11, 2014

_____

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter