United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GRECIA, | Lead Case No. C-14-0775 EMC |
| Plaintiff, | **CONSOLIDATED CASE** |
| v. | No. C-14-0969 EMC, *Grecia v. Sony Network* |
| APPLE INC., *et al.*, | **RELATED CASE** |
| Defendants. | No. C-14-1220 EMC, *Grecia v. VUDU, Inc.* |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SONY'S MOTION TO COMPEL PLAINTIFF TO SUPPLEMENT INFRINGEMENT CONTENTIONS**

**(Docket No. 121)**

Pending before the Court is Defendant Sony Network Entertainment International LLC's ("Sony") motion to compel Grecia to supplement his Patent Local Rule 3-1 infringement contentions. Docket No. 121. Sony also seeks to stay discovery until Grecia supplements his infringement contentions. For the reasons set forth herein, Sony's motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiff William Grecia ("Grecia") has filed a number of related cases in this Court. The cases concern U.S. Patent No. 8,533,860 ('860 Patent), entitled "Personalized Digital Media Access System-PDMAS Part II." The '860 Patent teaches a method of digital rights management ("DRM"). The invention disclosed by the '860 Patent seeks to address a growing need for more flexible DRM schemes. As consumption of music and video over the internet rose, DRM schemes provided a way

to control access to appropriate users. '860 Patent at 1:42-2:22. Prior art DRM methods included granting access to certain defined devices that had been granted permissions. *Id.* at 2:37-46. In general, prior art DRM methods required the content providers to manage permissions via sending authorization keys for fixed windows of time. *Id.* at 2:54-62. The claimed benefits of the '860 Patent included providing "unlimited interoperability" of digital media between unlimited machines, in a manner less vulnerable to the life cycles of particular servers, while protecting content from unlicensed distribution. *Id.* at 2:63-4-9.

## II. DISCUSSION

A. Legal Standard

Patent Local Rule 3-1 requires the party claiming infringement to serve a "Disclosure of Asserted Claims and Infringement Contentions." As part of the disclosure, Rule 3-1 requires that the patentee prepare, among other things, "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation. . .the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." Patent L.R. 3-1(c). Such disclosures "require a plaintiff to 'crystallize' its theories of the case early in the litigation and to adhere to those theories once disclosed." *Bender v. Freescale Semiconductor, Inc.,* No. C 09-1156 PJH MEJ, 2010 WL 1689465 at *2 (N.D. Cal. Apr. 26, 2010). In that vein, Rule 3-1 is a "discovery device" that streamlines patent discovery by supplanting contention interrogatories. *Id.* The disclosures under Rule 3-1 can therefore "hasten resolution on the merits." *Shared Memory Graphics LLC v. Apple, Inc.,* 812 F. Supp. 2d 1022, 1024 (N.D. Cal. 2010). These disclosures "may lay the groundwork for an early motion for summary judgment and or claims construction as to a few select claims." *Id.* at 1025.

In light of these salutary purposes, Rule 3-1 requires exacting identification of the accused instrumentalities and how those instrumentalities read on the alleged claim limitations. Patent L. R. 3-1(b); (c). It has been said that "a plaintiff must put forth information so specific that either reverse engineering or its equivalent is required." *InterTrust Technologies Corp. v. Microsoft Corp.,* No. C 01-1640 SBA, 2003 WL 23120174 at *2 (N.D. Cal. Dec. 1, 2003). On the other hand, courts have acknowledged that Rule 3-1 does not "require the disclosure of specific evidence nor do they require

2

a plaintiff to prove its infringement case." *Droplets, Inc. v. Amazon.com, Inc.,* No. C12-03733 HRL, 2013 WL 1563256 at *2 (N.D. Cal. Apr. 12, 2013) (citations omitted).  Instead, "the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Shared Memory,* 812 F. Supp. 2d at 1025.

B.  "Each Limitation"

To begin, the instant case does not involve thousands of pages of conclusory allegations regarding hundreds of allegedly infringing products.  *Cf. Bender v. Micrel Inc.,* No. C 09-01144 SI, 2010 WL 520513 (N.D. Cal. Feb. 6, 2010) (involving allegations as to 205 infringing products).  The present dispute concerns the infringement contentions for Claims 1 through 5.  *See* Kolassa Decl. Ex. F; Mot. At 7.  The only allegedly infringing instrumentality for these claims is the Sony Entertainment Network service ("SEN").  *See* Supp. Disclosures, Docket No. 121-6 at 2.

Certain of Grecia's infringement contentions provide sufficient detail to put Sony on notice of the accused instrumentalities and how they purportedly meet the claim limitations.  For example, Grecia contends that users use SEN through communications consoles (*e.g,*. a Playstation or a PC) to access digital content, such as music, movies, and games.  Ex. A at 6, 8.  Grecia contends that SEN employs three web services – Music Unlimited, Video Unlimited, and PlayStation Network – to verify access rights to the digital content.  *Id.* at 11.  Grecia has identified his contention that a "connection" is made with the device by a user selecting an application icon and has provided screenshots of the application.  *Id.*  The verification is enabled by graphic user interfaces ("GUIs") and Application Programmable Interface ("APIs").  Grecia has provided screenshots of the accused GUIs and has identified the accused APIs as Java and RESTful.  *Id.* at 11, 12.  Grecia has also identified the "sub account" that he has identified as belonging to the accused "secondary user" and has shown the page that he purports shows validation by a membership service.[1]  Such identification is sufficient for notice purposes as to those claim terms.  These infringement contentions do not require refinement.

---

[1] The only further clarity that would potentially be of use here is more specific identification of the "membership service."

1        Nevertheless, the Court agrees that certain infringement contentions would benefit from
2 further specificity, namely those pertaining to the metadata claim limitations.  For example, Claim 1
3 of the '860 Patent includes the following limitation language: "receiving a digital content access
4 request from at least one communications console of the plurality of data processing devices, the
5 access request being a read or write request of metadata of the digital content . . .".  '860 patent
6 14:38-41.  In his opposition, Grecia claims that the "read or write request of metadata of the digital
7 content" occurs when "Sony prompts [a hypothetical user] to request that her Sign-In ID be written
8 to the metadata of the digital content housed in her SEN accounts."  Opp. at 5.  This statement is not
9 what appears in the infringement contentions, which instead assert that "[t]he digital content access
10 request is a request to write metadata locations (at least one device as seen to the right, which stores
11 information about the user's SEN account and SEN (the cloud system) stores information about the
12 user's device (*e.g.,* metadata)."  Kolassa Decl., Ex. A at 8.  Setting aside the tortured construction
13 (and apparently missing parenthesis), this contention is unclear regarding what the metadata is and
14 how Sony's accused products make the alleged access request.  The statement in Grecia's opposition
15 is comparatively much more straightforward.  While the explanation in Grecia's opposition may
16 provide better Sony better notice of Grecia's infringement theory, Grecia's present explanation does
17 not cure the deficiency in his infringement contentions.  *See Droplets,* 2013 WL 1563256 at *3.
18 Grecia is directed to clarify the language in the infringement contentions, with "the type of guidance
19 provided in [Grecia's] Opposition."  *Id.*  Grecia must amend this infringement contention to show
20 *what* he claims is the metadata of the digital content and *how* any read or write request is made.

21        Similarly, the Court agrees with Sony that, to the extent Grecia defines the "two way data
22 exchange" as the request and receipt of the PIN and the rights token, *see* Opp. at 7, then that theory
23 should be spelled out in the infringement contentions on a claim-by-claim basis.  An appropriate
24 description would identify the two ways of data exchange.  That level of specificity is presently
25 absent.  *See* Ex. A at 11.  Furthermore, Grecia does not spell out the "rights tokens" alleged to be
26 requested and received for the Playstation services.  Grecia includes three screen shots, but the
27 Playstation screen shot appears to show only a Playstation icon.  The assertion that the request is
28 made "automatically" lacks specificity as to how and when the request is made.

4

By contrast, the two screenshots showing a request for "PIN" by the Bravia movie and video applications appear sufficient to put Sony on notice of what Grecia alleges is the request for identification reference or rights token. It is a fair assumption that after the PIN is entered into the interface that it is received. The Bravia screenshots and associated description provide fair notice to Sony of Grecia's infringement theory of the "rights token" as to that web service. Grecia need only amend his "rights token" contention as to Playstation.

C. <u>"Each Accused Instrumentality"</u>

In addition to objecting to the degree of specificity, Sony complains that the infringement contentions cite to "disparate websites." Motion at 3. The infringement contentions do identify different web services (*e.g.*. for Playstation, music, and movie content) within SEN and break down certain claims by particular web services. The degree of disclosure here generally appears appropriate. The Court, however, agrees that Grecia must be mindful of showing that claim limitations are met as to each accused service, and showing that all claim limitations are met for each service. For example, Claim 5 presently only has infringement analysis as to the Playstation Plus digital content, which is accessed via PS4 devices. To the extent that Grecia intends to assert Claim 5 as to Bravia HDTV and PS3, he must either show the limitations are met as to the relevant web services / consoles or show that the PS4 application is representative of those services. *See Micrel,* 2010 WL 520513 at *2. Amendment is needed to define the scope of Grecia's infringement claim.

The Court has also considered certain merits arguments raised by Sony, such as that the infringement contentions "show that the Accused Instrumentalities used the same DRM platform well before the alleged priority date." The Court finds that these arguments do not show insufficiency of the infringement contentions. If anything, the arguments on the merits tend to show that Sony has begun to crystallize its defenses to Grecia's theory of infringement. Thus, the Court views the limited amendments discussed herein as enough to allow the case to proceed.

### III.  CONCLUSION

The Court directs Grecia to amend his infringement contentions in accordance with the foregoing guidance and with particular attention to the infringement contentions regarding metadata.

5

On the other hand, Grecia's disclosures as to the accused instrumentality, the web services, the "connection," the GUIs, the APIs, the "sub account," and the "rights token" (as to Bravia HDTV) are sufficient.  The parties are ordered to meet and confer in person before Grecia's amendment. Grecia must file his amended disclosure thirty days from the date of this Order.  Discovery as to Sony is stayed until Grecia files his amended disclosures.  Upon amendment, discovery may commence absent further order.

This order disposes of Docket No. 121.

IT IS SO ORDERED.

Dated: September 19, 2014

_____
EDWARD M. CHEN
United States District Judge