UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GRECIA, | No. C-14-1220-EMC |
| Plaintiff, | **CONSOLIDATED WITH** |
| v. | Lead Case No. C-14-0775-EMC |
| VUDU, INC. and Digital Entertainment Content Ecosystem (DECE) LLC, | **ORDER (1) GRANTING DEFENDANT DIGITAL ENTERTAINMENT CONTENT ECOSYSTEM (DECE) LLC's MOTION TO DISMISS AND (2) DENYING DEFENDANT VUDU, INC.'S MOTION TO DISMISS** |
| Defendants. _____/ | (Docket Nos. 75, 82 – C-14-1220) |

Pending before the Court are Defendant VUDU and Defendant DECE's motions to dismiss. The operative complaint is the Second Amended Complaint ("SAC"). Docket No. 70. The SAC alleges direct and indirect infringement of United States Patent 8,533,860 (the "'860 patent") against VUDU and DECE respectively.

## I.   FACTUAL & PROCEDURAL BACKGROUND

The patent-in-suit concerns the field of digital rights management ("DRM"). Grecia alleges that the object of the '860 patent is to provide a method for protecting against unlicensed use of digital content, while allowing a consumer of digital media to enjoy his content on multiple devices and to share that content with friends and family. SAC at ¶¶ 8-11. The relevant claims in the '860 patent describe a method or system for DRM authentication using a cloud computing system. *Id.* Plaintiff Grecia owns the '860 patent. *Id.* Grecia has sued multiple defendants, including Apple and

Sony in the related consolidated matter (the *Apple* matter, Case No. C-14-0775), for infringement of the same patent claims at issue in this matter: claims 1, 2, 3, 4, 5, 9, and 10.[1]

Grecia's original complaint against VUDU and DECE was dismissed for failure to adequately plead direct infringement under a theory of joint infringement according to the standard articulated in *Muniauction, Inc. v. Thomson Corp.,* 532 F.3d 1318 (Fed. Cir. 2008). Docket No. 60. The initial complaint lacked any factual allegation that a single actor actually performed all the steps or was the "mastermind" who directed and controlled others in the performance of the steps. *Id.* Grecia's second claim, inducement, was also dismissed, because Grecia had not established the required predicate of direct infringement. *Id.* At the hearing on VUDU and DECE's initial motion to dismiss held on December 12, 2014, the Court granted leave to amend, but admonished Grecia that failure to amend his complaint to plead his claims sufficiently would lead to dismissal with prejudice. Docket No. 78-1 at 8:6-9.

Grecia then filed the SAC. As with his initial complaint, in the SAC, Grecia alleges two claims of infringement: (1) direct infringement, and (2) inducement of infringement. In the SAC, Grecia eliminated his prior contentions that DECE directly infringes the '860 patent and that DECE induces retailer entities other than VUDU to infringe the '860 patent. In other words, the SAC alleges direct infringement only against VUDU and alleges that DECE induced VUDU to infringe the '860 patent.

In his claim chart, Grecia contends that "VUDU is a movie streaming, digital rental, and digital download service." Docket No. 76-3 at 1-2.[2] In turn, DECE's ecosystem, Ultraviolet, is a

---

[1] The complaints against Apple (Docket No. 89) and Sony (ECF C-14-0969, Docket No. 33) allege infringement of those claims as well as infringement as to claims 21, 25, 28, and 29 of the '860 patent.

[2] DECE has attached documents that are referenced in the complaint, including a patent application (Docket No. 76-1, Shah Decl., Ex. A), an Information Disclosure Statement (Docket No. 76-2, Shah Decl., Ex. B), the claim chart for Grecia's infringement contentions (Docket No. 76-3, Ex. C), and the transmittal letter for the Information Disclosure Statement (Docket No. 76-4, Shah Decl., Ex. D). Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the complaint, however, a court may consider evidence on which the complaint necessarily relies if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010). In this case, the Court may consider these documents, because the SAC specifically refers to the documents, the

1 cloud-based DRM service that allows users to add digital "proofs of purchase" to their online movie
2 collections. *Id.* Grecia claims that "VUDU allows users to link their UltraViolet account to their
3 VUDU account to import previously purchased titles." *Id.* at 6. VUDU allegedly establishes this
4 connection by presenting an Ultraviolet login screen using Ultraviolet's Application Programmable
5 Interface. *Id.*

6 According to the SAC, the relationship between VUDU and DECE is governed by a license
7 agreement. SAC at ¶ 20.[3] The SAC alleges that VUDU directly infringed the patent by contracting
8 with DECE for coordinator services. Under DECE's form license agreement, a licensee, such as
9 VUDU, can enroll in various "Ecosystem Roles" within DECE's UltraViolet ecosystem. Docket
10 No. 79-1 at ¶ 1.3. According to the license agreement, the "license" contemplated is a license from
11 DECE to VUDU of DECE's copyrights and trade secrets in and to the UltraViolet Ecosystem
12 Specifications. Docket No. 79-1 at ¶ 2.1. In exchange for this license, the licensee pays DECE fees
13 pursuant to a fee schedule that is referenced, but not included, in the form agreement. *Id.* at ¶ 1.6.1.
14 The licensee, in turn, agrees to comply with the Ultraviolet Ecosystem Specifications and
15 Compliance Rules. *Id.* at ¶ 1.2. As to claim 1 of the '860 patent, the SAC alleges that VUDU uses
16 DECE's services to perform the steps of (1) requesting and receiving an identification reference, and
17 (2) writing the identification reference into the metadata.

18 VUDU argues that the direct infringement claim in the SAC should be dismissed, because
19 (1) the allegation that VUDU directed and controlled DECE is contradicted by Grecia's claim that

---

documents are central to Grecia's claims regarding DECE's state of mind, and Grecia does not question the authenticity of the documents or object to their consideration. *Id.*

[3] VUDU has requested judicial notice of the UltraViolet License Agreement. Docket No. 79; Docket No. 79-1 (license agreement). The licensing agreement is appropriate to consider, because it is specifically referenced in the complaint and is central to Grecia's claim of VUDU's direct infringement as a purported "mastermind." *See Daniels-Hall,* 629 F.3d at 998. That said, as Grecia notes, the document subject to the request for notice is not the actual agreement entered into by VUDU and DECE. Instead, the proffered agreement is a form agreement, and does not reflect many terms of the agreement that are specific to the arrangement between VUDU and DECE. The more specific terms are incorporated by reference into the agreement (*e.g.,* fee schedule, enrollment form, system specifications). Nevertheless, the license agreement before the Court does purport to show general terms applicable to all licensees. Grecia does not question the authenticity of the agreement as to these general terms. The Court therefore **GRANTS** VUDU's request for judicial notice, however, the Court will construe both the general terms included in the agreement, as well as the absent terms that are not before the Court, in the light most favorable to Grecia.

3

DECE induces VUDU to infringe; (2) the UltraViolet licensing agreement does not support a finding of direction and control; and (3) the pleadings are conclusory.

DECE challenges the factual sufficiency of Plaintiff's inducement claim. DECE argues that Plaintiff has not sufficiently alleged inducement because there are no non-conclusory allegations that DECE (1) knew of the '860 patent; (2) knowingly induced VUDU to perform infringing acts; or (3) specifically intended to encourage VUDU's direct infringement of the '860 patent. DECE echoes VUDU's argument that it is fundamentally inconsistent to allege that VUDU directs and controls DECE and also that DECE induces VUDU's infringement. And because there can be no inducement without direct infringement, DECE contends that therefore dismissal of Count 2 is proper.

For the reasons stated on the record at the hearing, and as supplemented herein, the Court **DENIES** VUDU's motion to dismiss and **GRANTS** DECE's motion to dismiss. The Court, having considered the supplemental briefing of the parties, grants DECE's motion to dismiss with prejudice.

## II. DISCUSSION

A. Legal Standard

To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought." *See* Fed. R. Civ. P. 8(a)(2). In other words, the Complaint must provide a "defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir. 2001) (citation omitted).

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Zixiang Li v. Kerry,* 710 F.3d 995, 999 (9th Cir. 2013). A Rule 12(b)(6) motion tests whether plaintiff has sufficiently stated "a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is therefore proper when the complaint merely contains "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." *Id*. Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not show a plausible claim for relief and should be dismissed. *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In reviewing a motion to dismiss, the court assumes all factual allegations in the complaint are true and views the pleadings in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008).

B. <u>Direct Infringement</u>

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . infringes the patent." 35 U.S.C. § 271(a). Under the statute, "liability for infringement requires a party to make, use, sell, or offer to sell the patented invention, meaning the entire patented invention." *BMC Res., Inc. v. Paymentech,* L.P., 498 F.3d 1373, 1380 (Fed. Cir. 2007) *overruled on other grounds by Akamai Technologies, Inc. v. Limelight Networks, Inc.,* 692 F.3d 1301 (Fed. Cir. 2012).

To prove direct infringement, the patentee must show that the accused device or process reads on each claim limitation. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40 (1997) (holding that doctrine of equivalents, like literal infringement should be applied on an element-by-element basis); *TechSearch, L.L.C. v. Intel Corp.,* 286 F.3d 1360, 1371 (Fed. Cir. 2002) ("To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system."). In a method or system invention, such as the inventions taught by the patent-in-suit, a patentee's rights extend only to the claimed combination of steps, and the patent "is not infringed unless all the steps are carried out." *Limelight Networks, Inc. v. Akamai Technologies, Inc.,* 134 S. Ct. 2111, 2117 (2014) *rev'd on other grounds,* 134 S. Ct. 2111 (2014).

In addition, under current Federal Circuit law, direct infringement requires that a single party perform those steps. *Muniauction, Inc. v. Thomson Corp.,* 532 F.3d 1318, 1329 (Fed. Cir. 2008). The single-party requirement reflects consideration of the strict liability nature of direct infringement. *Akamai,* 692 F.3d at 1307. Extending liability to situations where multiple independent parties perform the steps of the claim would otherwise risk "ensnar[ing] actors who did

not themselves commit all the acts necessary to constitute infringement and who had no way of knowing that others were acting in a way that rendered their collective conduct infringing." *Id.*

On the other hand, the single-party requirement must be applied in light of the "well-settled rule that a defendant cannot [] avoid liability for direct infringement by having someone else carry out one or more of the claimed steps on its behalf." *Muniauction,* 532 F.3d at 1329 (citation omitted); *cf. Pellegrini v. Analog Devices, Inc.,* 375 F.3d 1113, 1118 (Fed. Cir. 2004) (agreeing that "one cannot escape liability for infringement as a manufacturer of infringing products simply by employing an agent or independent contractor to carry out the actual physical manufacturing" (discussing *Crowell v. Baker Oil Tools,* 143 F.2d 1003 (9th Cir.1944)). "Thus, for a party to be liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally *or vicariously*." *Aristocrat Technologies Australia Pty Ltd. v. Int'l Game Tech.,* 709 F.3d 1348, 1362 (Fed. Cir. 2013) (citation omitted, emphasis added).

### 1. Joint Infringement

Vicarious liability may arise where multiple parties are alleged to have collaboratively performed the infringing steps of a patented method. In those circumstances, a patentee must show that one party directed or controlled the performance of all of the infringing steps to prove direct infringement liability. In other words, "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises control or direction over the entire process such that every step is attributable to the controlling party, *i.e.,* the mastermind." *Muniauction,* 532 F.3d at 1329 (citation omitted). The degree of control or direction present in a multi-party situation exists in a "spectrum." *Id.* At one end of the spectrum, a mastermind orchestrates the entire process and is liable for direct infringement. At the other end, there is "mere arms-length cooperation" which does not constitute direct infringement. *Id.*

Consequently, to successfully allege divided direct infringement, a plaintiff must show that the alleged mastermind is vicariously liable, because it controlled the actions of the party who carried out the other steps. *See BMC Res., Inc. v. Paymentech, L.P.,* 498 F.3d 1373, 1379 (Fed. Cir. 2007) (reasoning that "the law imposes vicarious liability on a party for the acts of another in

circumstances showing that the liable party controlled the conduct of the acting party"); *see also Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.,* 631 F.3d 1279, 1286 (Fed. Cir. 2011) ("The only way that Centillion can establish 'use' by Qwest is if Qwest is vicariously liable for the actions of its customers such that 'use' by the customers may be attributed to Qwest."). Mere connection, awareness, cooperation, or facilitation between the alleged mastermind and another party is not enough to show direction or control. *See Muniauction*, 532 F.3d at 1330 (insufficient control).

The presence of a contract is relevant to discerning direction or control. A party cannot circumvent liability for infringement "simply by contracting out steps of a patented process to another entity." *BMC,* 498 F.3d at 1381. If the mastermind orchestrates an infringing process through contract with another, that mastermind is subject to liability. *Id.* In this case, in contrast with cases cited by VUDU, the SAC clearly alleges that VUDU directly infringed the patent pursuant to a contractual relationship with DECE. SAC ¶ 20; *cf. Brandywine Commc'ns Technologies, LLC v. Casio Computer Co.,* 912 F. Supp. 2d 1338, 1351 (M.D. Fla. 2012) (declining to infer a contractual relationship based on mere allegation of "some relationship"); *BMC Resources*, 498 F.3d at 1382 (commenting that the summary judgment record "contained no evidence even of a contractual relationship" between the alleged joint infringers); *Nu Flow Technologies (2000) Inc. v. A.O. Reed & Co.,* No. 13-CV-1818 BEN JMA, 2014 WL 1400127, at *2 (S.D. Cal. Apr. 8, 2014) (dismissing case where the complaint did not make clear whether the defendants acted independently or jointly).

To be sure, the mere existence of some contractual relationship is not enough. The contract must impose an obligation on the allegedly "controlled" party to perform the infringing steps. *Compare Akamai,* 629 F.3d at 1321 ("[T]he agreement merely provide[d] the customers with the tools to allow them to exercise their independent discretion and control over how and in what respect they implement the system."); *Keithley v. Homestore.com, Inc.,* 636 F. Supp. 2d 978, 985 (N.D. Cal. 2008) (granting summary judgment where the contract was a website-provider's "Terms and Conditions" and the users were under no obligation to access any particular information); *Joao Control & Monitoring Systems of California, LLC v. Sling Media, Inc.,* No. C-11-6277 EMC, 2012

WL 3249510 at *7-8 (N.D. Cal. August 7, 2012) (holding contractual requirement to create an account and install software did "not *obligate* customers to do anything under Sling's control, nor [did] it mandate any action by customers *on behalf of Sling*" (emphasis in original)) *with Clear with Computers, LLC v. Hyundai Motor Am., Inc.,* No. 6:09 CV 479, 2011 WL 2436535, at *3 (E.D. Tex. June 14, 2011) (denying summary judgment where the allegedly infringing acts took place on third-party servers pursuant to a contract between a separate affiliate entity and the third parties); *Fed.-Mogul World Wide, Inc. v. Mahle GmbH,* No. 11-10675, 2011 WL 4485080, at *11 (E.D. Mich. Sept. 27, 2011) (denying summary judgment as to a patent that taught a method for making car pistons where "the existence of exemplar quotes, purchase orders, invoices, and drawings . . . . raise[d] a reasonable inference that Mahle was, through its contracting process, directing M Tech as to how, when, and in what quantities it was to produce the allegedly infringing pistons."); *Rowe Int'l Corp. v. Ecast, Inc.*, 586 F. Supp. 2d 924, 933 (N.D. Ill. 2008) (denying summary judgment as to a divided infringement claim based on record evidence that "indicates that Ecast literally contracted out to Rock–Ola and View the jukebox hardware element of the asserted claims")*.*

Similarly, the degree of instruction the putative mastermind gives to the alleged joint infringer is also relevant, but not dispositive, to discerning the degree of control over the third party. *Compare Emtel, Inc. v. Lipidlabs, Inc.,* 583 F. Supp. 2d 811, 834 (S.D. Tex. 2008) ("instructions or prompts to the third party in its performance of the steps necessary to complete infringement, or facilitating or arranging for the third-party's involvement in the alleged infringement [ ] not sufficient."); *with Nalco Co. v. Turner Designs, Inc.,* No. 13-CV-02727 NC, 2014 WL 5335736, at *5 (N.D. Cal. Oct. 17, 2014) ("reasonable jury could certainly conclude that the end user [of the fluorometer] 'contracted out steps of a patented process to another entity," as "a genuine dispute of material fact exists over whether the contractual relationship between the end user and the water treatment companies, and the obligations that spring from that relationship, can establish direction or control.") (citing *BMC,* 498 F.3d at 1381).

Viewing the licensing agreement in the light most favorable to Grecia, it appears that DECE was obligated under the licensing agreement to perform the steps that allegedly infringed Grecia's patent. Under the licensing agreement, VUDU pays fees in exchange for the license of DECE's

8

copyrights and trade secrets in and to the Ecosystem Specifications. Docket No. 79-1 at ¶ 1.6; 2.1. In other words, VUDU purchases the ability to implement and use DECE's Ecosystem Specifications. Construing the allegations in Grecia's favor, DECE's performance of its contractual obligations enables VUDU to practice the allegedly infringing steps within a framework provided by DECE. Under the allegations of the SAC, DECE could not "fulfill its obligations under the contract [with VUDU] without satisfying the limitation at issue." *Ronald A. Katz Tech. Licensing, Ltd.,* No. 2:07-ML-1816-C-RGK, 2010 WL 8759120, at *8 (C.D. Cal. Dec. 3, 2010).

Moreover, the licensing agreement contains terms that are generally consistent with an agency relationship wherein VUDU is the principal and thus in a position of control (even though it is the licensee). For example, the ability to terminate an agent's authority is relevant to whether an agent is subject to a principal's control. Restatement (Third) Of Agency § 1.01 (2006). Under the licensing agreement here, VUDU has the right to terminate at its election upon 30 days written notice, whereas DECE can terminate only upon certain termination events. Docket No. 79-1 at 16-17. The licensing agreement in this case also imposes a number of indemnity obligations on VUDU as to DECE. Docket No. 79-1 at ¶ 9.1.1. The indemnity term further implies VUDU acts as the principal in an agency relationship with DECE. *See Nalco,* 2014 WL 5335736, at *5 (determining that the indemnification clause demonstrated that "a reasonable jury could find that the [mastermind] end-user [] agreed to be held vicariously liable for injuries that result from actions by [the agent – the water treatment company], which includes handling and use of the [accused device].").

Grecia has thus adequately alleged that VUDU contracted out steps of a patented process to DECE and exercised sufficient control so as to be liable therefor. *BMC,* 498 F.3d at 1381; *see also Nuance Communs. Inc. v. Tellme Networks, Inc.,* 707 F. Supp. 2d 472, 484 (D. Del. 2010) (holding reasonable jury could conclude that, due to the level of contractual control present, the service provider's actions should be attributable to direct infringer customers). The allegations in the SAC are undoubtedly short and plain. Nevertheless, Grecia has pled sufficient factual content against VUDU to survive a motion to dismiss. VUDU is alleged to link its users to the UltraViolet services provided by VUDU's contract with DECE. SAC ¶¶ 19-23. While the framework for the UltraViolet services is established by DECE, under the licensing agreement, those services must be performed.

9

Docket No. 79-1 at ¶ 2.1. VUDU cannot avoid liability for direct infringement by "contracting out steps of a patented process to another entity." *BMC,* 498 F.3d at 1381. The SAC therefore pleads a plausible claim that VUDU acted as a "mastermind" direct infringer.

DECE opined at the hearing that it was technically possible for DECE to have changed its specifications to be non-infringing while still meeting its obligations under the licensing agreement. Such argument, however, relies on proof of factual matter outside the SAC. On a motion to dismiss, the Court cannot look beyond the pleadings, Fed. R. Civ. P. 12(d), must assume all factual allegations in the Complaint are true, *see Manzarek,* 519 F.3d at 1031, and must view the pleadings in the light most favorable to the plaintiff, *id.* As such, DECE's argument is in the nature of a factual defense that can be raised via a motion for summary judgment or through trial; it cannot carry a motion to dismiss. In the light most favorable to Grecia, VUDU contracted out steps of a patented process.

### 2. Consistency Between Claims 1 and 2

VUDU and DECE also argue that there are fundamental and specific inconsistencies between the allegations of infringement and the allegations of inducement. The thrust of the argument is that the allegation that VUDU exercises direction and control cannot be reconciled with the allegation that VUDU is induced. Docket No. 89 at 7 (arguing "a 'mastermind' is not one that could be induced by the party it directs and controls.").

However, inducement does not require proof that the alleged inducer exercised direction or control over the direct infringer. Instead, inducement "typically includes acts that intentionally cause, urge, encourage, or aid another to directly infringe a patent." *Arris Grp., Inc. v. British Telecommunications PLC,* 639 F.3d 1368, 1379 n.13 (Fed. Cir. 2011). The Federal Circuit has commented that inducement encompasses a variety of affirmative acts: "[t]he term [inducement] is as broad as the range of actions by which one in fact causes, or urges, or encourages, or aids another to infringe a patent." *Tegal Corp. v. Tokyo Electron Co.,* 248 F.3d 1376, 1379 (Fed. Cir. 2001) (quoting *Fromberg, Inc. v. Thornhill,* 315 F.2d 407, 411 (5th Cir. 1963)).

There is also no legal or logical requirement that an inducer be the direct infringer, and not the agent of the direct infringer. *See Symantec Corp. v. Computer Assocs. Int'l, Inc.,* 522 F.3d 1279,

1293 (Fed. Cir. 2008) (vacating grant of summary judgment due to genuine issues of material fact as to whether inducement had been established where defendant encouraged the alleged direct infringers to engage in direct infringement); *Nuance,* 707 F. Supp. 2d at 485-86 ("[I]t is not legally inconsistent to determine, on one hand, that [defendant's] customers wield sufficient control such that [defendant's] actions are attributable to its customers and, on the other hand, that [defendant] possesses the requisite knowledge and specific intent to encourage the direct infringement of its customers."); *VLT Corp. v. Unitrode Corp.,* 130 F. Supp. 2d 178, 201 (D. Mass. 2001) ("[N]o evidence of control over an infringing third party would be necessary to demonstrate the element of intent under § 271(b).").

C.  <u>Inducement</u>

Unlike direct infringement, inducement is not a strict liability tort. Under the statute, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). The Supreme Court has held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.,* 131 S. Ct. 2060, 2068 (2011). As a result, inducement requires proof of knowledge of the relevant patent. *Id.* The patent holder must also prove that, once the defendant knew of the patent, the defendant "actively and *knowingly* aided and abetted another's direct infringement." *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293, 1305 (Fed. Cir. 2006) (citation omitted; emphasis in original).[4]

The required knowledge is more than knowledge of possible infringement. *Id.* Knowledge that the induced acts constitute patent infringement requires actual knowledge or willful blindness; recklessness or negligence is not enough. *Commil USA, LLC v. Cisco Sys.,* 720 F.3d 1361, 1366 (Fed. Cir. 2013). At the motion to dismiss stage, this means that a claim of inducement "must contain facts plausibly showing that [the defendant] specifically intended [the direct infringer] to infringe [the patent-in-suit] and knew that the [direct infringer's] acts constituted infringement." *In*

---

[4] As this Court held on the prior motions to dismiss in this matter, *Iqbal* and *Twombly* provide the pleading standards for indirect infringement. Docket No. 60 (citing *In re Bill of Lading,* 681 F.3d at 1336); *see also Superior Indus., LLC v. Thor Global Enterprises Ltd.,* 700 F.3d 1287, 1295 (Fed. Cir. 2012). As a result, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are not enough to survive a motion to dismiss a claim of inducement. *Iqbal,* 556 U.S. at 663.

*re Bill of Lading Transmission & Processing Sys. Patent Litig.,* 681 F.3d 1323, 1339 (Fed. Cir. 2012).

The central dispute as to DECE is regarding whether Grecia has sufficiently pled DECE's knowledge of the patent, specific intent to infringe, and knowledge that VUDU's acts would constitute infringement.

1. <u>Knowledge of the '860 Patent</u>

DECE contends that Grecia has not adequately pled that DECE knew of the '860 patent. Grecia has alleged that DECE knew of the '860 patent, because of an Information Disclosure Statement filed with the PTO. Grecia alleges:

> DECE's knowledge of the '860 patent is based on, among other things, DECE or individuals acting on DECE's behalf disclosing the '860 patent to the United States Patent and Trademark Office as relevant prior art in case 13/436,567. This admission by DECE that the '860 patent is relevant to the DECE ecosystem demonstrates that DECE specifically intends that VUDU infringe the '860 patent and that DECE knows that VUDU's acts constitute infringement.

SAC ¶ 25. This allegation is insufficient to establish knowledge of the patent.

First, DECE did not disclose the '860 patent to the PTO in connection with the cited patent application. The patent application at issue discloses a "consumer rights locker" that teaches a method / system for storing, building, managing, and controlling consumer personal information. Docket No. 76-1. The inventors of the consumer rights locker are listed as Richard Berger and Mitch Singer. *Id.* The invention was assigned to Sony Pictures Television and Sony Corporation at the time of the patent application. *Id.* Nowhere is DECE or its ecosystem mentioned.

Second, Grecia's claim that an individual acting on DECE's behalf disclosed the '860 patent in connection with the referenced patent application is not accurate. The patent application, on its face, shows that the application was prosecuted by its assignees, Sony Pictures Television and Sony Corporation, not DECE. Grecia responds, in his opposition, that one of the inventors listed on the patent application, Mitch Singer, is the president of DECE. Grecia further argues that Sony is a founding member of DECE. Grecia also contends that Mitch Singer invited Grecia to become a member of DECE. SAC ¶ 26.

To begin, it is appropriate to disregard facts introduced in Grecia's opposition memorandum, but not in the SAC. *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 (9th Cir. 1989) ("Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."); *Schneider v. California Dep't of Corr.,* 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)); *Session v. PLM Lender Servs., Inc.,* No. C 10-04942 WHA, 2011 WL 6748510, at *5 (N.D. Cal. Dec. 22, 2011) ("A plaintiff cannot avoid dismissal of her complaint by alleging new facts in opposition to a motion to dismiss.").

In any event, none of Grecia's newly-alleged facts, even if considered, plausibly leads to the inference that the subject patent application may fairly be attributed to DECE. The patent application clearly identifies Sony Pictures Television and Sony Corporation as the assignees of the patent. The information disclosure form appears to have been submitted by an agent of Sony from a law firm in San Diego. *See* Docket No. 76-4 at 2. Thus, the disclosure form is several steps removed from DECE and, without more, cannot be attributable to DECE. Nor is there enough to impute such knowledge to Mitch Singer and then in turn impute Singer's knowledge to DECE; nothing suggests Mr. Singer's invention activities included the prosecution of the patent application and the related disclosure where Sony is specifically named as the assignee.

Third, Grecia specifically alleges that DECE acted only with "knowledge of the patent disclosure." SAC ¶ 26. As Grecia concedes, knowledge of the patent disclosure is not enough to state a claim for inducement. Opp. at 12 n.2 ("If Grecia relied solely on DECE's knowledge of the '860 disclosure, DECE would have a point that such knowledge of the disclosure but not the patent itself would be insufficient to state an inducement claim."). The Information Disclosure Statement reveals nothing about the claims of the '860 patent and does not suffice to show knowledge of the patent's existence. Docket No. 76-2; *see Radware, Ltd. v. A10 Networks,* 2013 WL 5373305, at *3, 5-6 (N.D. Cal. Sept. 24, 2013) (requiring party to "plead actual notice of the patents in suit and infringement thereof"); *see also EON Corp. IP Holdings LLC v. FLO TV Inc.,* 802 F. Supp. 2d 527, 533-34 (D. Del. 2011) (granting motion to dismiss inducement claim where basis for alleged

13

knowledge of the patent was licensing agreements to other patents that merely cited the patent-in-suit as prior art).

Grecia has not adequately alleged knowledge of the '860 patent and therefore has not established knowledge of likely infringement in the SAC. This failure is fatal to Grecia's inducement claim and warrants dismissal. *See Global-Tech,* 131 S. Ct. at 2068 (holding knowledge of the existence of the patent that is infringed is required for induced infringement).

### 2. Post-Complaint Knowledge

The SAC does not allege post-complaint inducement. The SAC only alleges DECE had knowledge of the patent at the time of the information disclosure statement and that DECE thereafter induced VUDU through the UltraViolet licensing agreement to infringe on Grecia's patent. *See* SAC ¶¶ 25-28; *see also* Opp. at 11-12 ("Grecia alleges DECE's *pre-complaint* knowledge of the '860 patent from three different sources." (emphasis added)). The SAC contains no allegations of any additional inducing activity by DECE after Grecia commenced this litigation.

In his opposition to the motion to dismiss, Grecia did not argue that he had alleged or would seek to allege DECE's post-complaint knowledge of the '860 patent. Instead, at the hearing, during the discussion of whether amendment would be futile, Grecia requested leave to submit supplemental briefing on post-complaint inducement. The Court granted both parties leave to address this issue and specifically instructed the parties to confront the question of whether "even when there is no additional activity and the alleged inducer is contractually bound, and doesn't do anything more, that – somehow, that that can be deemed inducement if [the alleged inducer] acquires knowledge in the course of its performance of its contractually-obligated duties." 12/12/14 Hrg. Tr. 35:4-10.

The parties have submitted their supplemental briefs, and the Court has considered the parties' additional arguments. To begin, the Federal Circuit has not rejected claims for inducement where the predicate knowledge of the patent comes from the litigation itself. *See LaserDynamics, Inc. v. Quanta Computer, Inc.,* 694 F.3d 51, 75 (Fed. Cir. 2012) (commenting that there was no dispute that defendant first became liable for active inducement of infringement when the lawsuit was filed in August of 2006); *In re Bill of Lading,* 681 F.3d at 1339. Moreover, the Court agrees

14

with other decisions from the Northern District that have recognized that post-complaint knowledge of a patent can give rise to a claim for post-complaint inducement. *Bascom Research LLC v. Facebook, Inc.,* No. C 12-6293 SI, 2013 WL 968210, at *4 (N.D. Cal. Mar. 12, 2013) ("This Court agrees with the other decisions in this District and holds that knowledge of the patents can be established through the filing of the complaint."); *Symantec Corp. v. Veeam Software Corp.,* No. C-12-0700 SI, 2012 WL 1965832, at *4 (N.D. Cal. May 31, 2012); *EON Corp. IP Holdings, LLC v. Sensus USA, Inc.,* No. C-12-1011 EMC, 2012 WL 4514138, at *1 (N.D. Cal. Oct. 1, 2012).

As discussed above, however, there can be no inducement *prior* to knowledge of the patent. *See Global-Tech,* 131 S. Ct. at 2068; *see also Nat'l Presto Indus., Inc. v. W. Bend Co.,* 76 F.3d 1185, 1196 (Fed. Cir. 1996) ("The principle of liability for 'aiding and abetting' the wrongful acts of others is not imposed retrospectively, to make illegal an act that was not illegal when it was done."). Thus, DECE's post-complaint knowledge of the patent can at most support a claim for post-filing conduct. *Bascom*, 2013 WL 968210, at *4 (holding that where post-filing knowledge is alleged, claim for induced infringement is limited to post-filing conduct).

Even if the Court were to allow yet another amendment to allow Grecia to belatedly add a claim for post-filing inducement, his claim would be problematic. In general, active inducement requires affirmative steps to induce another's infringement. *Microsoft Corp. v. DataTern, Inc.,* 755 F.3d 899, 904 (Fed. Cir. 2014); *Global-Tech,* 131 S. Ct. at 2065 (interpreting Section 271(b) and finding that the "addition of the adverb 'actively' suggests that the inducement must involve the taking of affirmative steps to bring about the desired result"). Thus, Section 271(b) does not encompass inaction or failure to stop another's continued direct infringement. For example, the Federal Circuit has rejected the allegation that a corporation induced infringement on a theory that the corporation failed to stop the continued patent infringement of a company in which its majority-owned subsidiary acquired a significant ownership position. *A. Stucki Co. v. Worthington Indus., Inc.,* 849 F.2d 593, 597, 597 n.2 (Fed. Cir. 1988). The Federal Circuit deemed the plaintiff's proposed inference that defendant assented to, condoned, and endorsed continued infringement to be unjustified, even where the facts showed that the corporation was apprised of the patent litigation. *Id.* Instead, the Federal Circuit emphasized that evidence of active inducement was needed. *Id.* In a

more recent case, the Federal Circuit similarly concluded that inaction could not constitute "facilitating" inducement in violation of an injunction, because facilitating, like active inducement, requires an affirmative act of some kind. *Tegal,* 248 F.3d at 1378.

Grecia's proposed new theory of post-complaint inducement rests on no affirmative acts by DECE after Grecia initiated this litigation. In this case, Grecia has only alleged DECE's inducement *vis a vis* the UltraViolet licensing agreement with VUDU. But Grecia concedes that VUDU and DECE entered the UltraViolet licensing agreement *before* he filed his initial complaint. *See* 12/12/14 Hrg. Tr. at 20:10-18; *see also* Docket No. 1 at ¶¶ 14, 25. In his supplemental brief, Grecia contends that DECE had "three choices" when it learned of the patent through this litigation: "(1) do nothing, defend against the allegation, and risk damages; (2) take a license from the patentee; or (3) terminate the contract according to which the offending service was being provided." Docket No. 159 at 3.

The problem with Grecia's argument is that "doing nothing" is not active inducement. *See Tegal,* 248 F.3d at 1378. In this case, the license agreement was for an initial term of five years with automatic renewal for additional five-year terms, subject to VUDU's unilateral right to notify DECE that it did not wish to renew the license. *See* Docket No. 79-1 at 16, ¶ 1.1.1. Grecia seeks to amend his inducement claim to argue that the filing of his complaint triggered a duty for DECE to take steps to prevent VUDU's infringement, such as terminating the licensing agreement with VUDU for cause. Failure to prevent another's infringement, however, does not state a claim for inducement. *A. Stucki,* 849 F.2d at 597, 597 n.2.[5]

The Court will not allow Grecia yet another opportunity to amend his pleadings to allege a post-complaint theory of inducement. Not only would this be an exercise in futility, Grecia has had approximately seven months between the filing of his initial complaint and the filing of the SAC to get his pleadings in order. He has already amended his complaint twice. At the first hearing on the Defendants' motions to dismiss, the Court specifically cautioned Grecia that a subsequent dismissal

---

[5] The Court does not foreclose the possibility that a licensor may be subject to a claim of inducement even after a license has been entered. For example, a plaintiff may allege that the licensor took steps to provide instruction or other encouragement after the entry of the license. In this particular case, however, Grecia has not alleged any affirmative steps by DECE after DECE had notice of the patent through the litigation.

would be with prejudice.  Docket No. 78-1 at 8:6-9.  Grecia has had ample opportunity over many months to allege a sufficiently pled claim.  He has yet to do so.  The Court declines to permit Grecia leave to amend.  *See Foman v. Davis,* 371 U.S. 178, 182 (1962) (discussing reasons for denying leave to amend, including, as relevant here, undue delay, repeated failure to cure deficiencies by amendments previously allowed, and futility of amendment).

### III.    CONCLUSION

For the foregoing reasons, and as stated at the hearing, the Court **DENIES** VUDU's motion to dismiss.  Grecia has sufficiently pled facts showing the plausibility of VUDU's direction or control over the steps practiced by DECE under contract.

The Court **GRANTS** DECE's motion to dismiss and dismisses with prejudice Grecia's claim that DECE induced VUDU's infringement.

This order disposes of Docket Nos. 75 and 82 in C-14-1220.

IT IS SO ORDERED.

Dated: February 9, 2015

_____
EDWARD M. CHEN
United States District Judge